[730 NYS2d 272]

ANGELO ACQUISTA, Appellant, v NEW YORK LIFE INSURANCE COMPANY, Respondent, et al., Defendants.

First Department, July 5, 2001

## APPEARANCES OF COUNSEL

*Martin B. Adams* of counsel (*Glenn W. Dopf* on the brief; *Kopff, Nardelli & Dopf, L. L. P.,* attorneys), for appellant.

*William J. Bradley, III,* of counsel (*James P. Chou, William B. Kerr, Jo Beth Eubanks* and *Pamela G. Matthews* on the brief; *Akin, Gump, Strauss, Hauer & Feld, L. L. P.,* attorneys), for respondent.

## OPINION OF THE COURT

Saxe, J.

This appeal considers plaintiff's entitlement to insurance

benefits under three disability insurance policies purchased through defendant insurance agents Jenny Kho and Helen Kho, and issued by defendant New York Life Insurance Company.

In November 1995, plaintiff, a physician with specialities in internal and pulmonary medicine, initially became ill. While an exact diagnosis turned out to be difficult, he underwent numerous bone marrow aspirates, biopsies, and cytogenetic examinations, including blood tests, which revealed abnormalities and the presence of a blood disorder. Dr. Acquista was ultimately informed of a possible diagnosis of myelodysplasia, a disease that might convert into leukemia. His treating physicians have instructed him to avoid exposure to radiation. Presently, he suffers generally from easy fatigue, headaches, and diffuse muscle and joint pain.

However, his application for disability benefits under the three disability insurance policies was rejected by the defendant insurer, on the ground that he can still perform some of "the substantial and material duties" of his regular job or jobs and therefore is not "totally disabled." This lawsuit followed, in which plaintiff brought claims for breach of contract, bad faith and unfair practices, fraud and fraudulent misrepresentation, and negligent infliction of emotional distress.

Upon defendants' motion under CPLR 3211, the Supreme Court granted dismissal of all plaintiff's causes of action except the one based upon the policy provision for residual and partial disability benefits. We now modify the order so as to reinstate a number of the dismissed causes of action.

*The Breach of Contract Claims*

■ In support of their motion for dismissal of plaintiff's first, second, and third causes of action, claiming breach of contract, defendants relied upon the language of the three disability insurance policies purchased by plaintiff. Two of those policies provided that the insured will be considered totally disabled if he cannot perform "the substantial and material duties" of his regular job or jobs. The third, somewhat more specifically, defined totally disabled as unable to perform *"any* of the substantial and material duties" of his regular job or jobs (emphasis supplied). Defendants emphasized that plaintiff is certified both as a pulmonologist and an internist, and assert that plaintiff is still able to perform some of the "substantial and material duties" of an internist.

In addition to the policies themselves, defendants relied upon a 1996 deposition of plaintiff in an unrelated action, at which

he stated that in 1992 his practice consisted of both internal medicine and pulmonary medicine, and that he was at that time assistant chief of the Intensive Care Unit (ICU) at Lenox Hill Hospital, teaching the residents during their rotation through the ICU two to three times per week, as well as rotating through the ICU two months out of the year. He added that he was also Chairman of the Lenox Hill Hospital Quality Assurance Committee. Defendants further relied upon plaintiff's statements in a "Confirmation of Interview" form that he is not totally disabled, since he characterized his claim to be for "virtually total disability" from his pulmonary medicine practice. Finally, defendants pointed to a letter dated August 31, 1998, in which plaintiff's counsel stated that plaintiff "can still perform some substantial and material duties of other work activities, including other types of medical practice and certain other business, managerial and administrative activities."

In granting dismissal of these causes of action, the IAS court concluded that even though plaintiff was unable to perform bronchoscopies and other procedures using radiology during the relevant time period, he remained able to practice internal medicine as well as aspects of pulmonary medicine that do not necessitate exposure to radiation. We view this conclusion as a factual determination unwarranted in this context.

Upon review of a motion made pursuant to CPLR 3211, we are required to accept as true the allegations of the complaint (*Guggenheimer v Ginzburg*, 43 NY2d 268, 275). While factual claims flatly contradicted by indisputable documentary evidence are not entitled to such consideration (*see, Biondi v Beekman Hill House Apt. Corp.*, 257 AD2d 76, 80-81, *affd* 94 NY2d 659), where the pleaded facts state a cause of action, documentary evidence may result in dismissal only where "it has been shown that a material fact as claimed by the pleader * * * is not a fact at all and * * * no significant dispute exists regarding it" (*Guggenheimer v Ginzburg*, 43 NY2d 268, 275). The documents relied upon by defendant insurer do not flatly disprove the allegations contained in the complaint. Consequently, the question of whether plaintiff can still perform "the substantial and material duties" of the regular job or jobs that he performed prior to the onset of his illness, is not amenable to determination here as a matter of law.

It is irrelevant whether plaintiff is still able to perform other types of tasks. To prevail on their motion, defendants' documents must conclusively establish, *as a matter of law*, that

contrary to plaintiff's allegations, he is still able to perform "the substantial and material duties" of his regular job or jobs *as they existed before he became ill*. While in some cases it may be possible to make this determination as a matter of law (*see, e.g., Taterka v Nationwide Mut. Ins. Co.*, 91 AD2d 568, *affd* 59 NY2d 743), in the present instance the determination requires the making of findings of fact, which is not proper in this context.

In plaintiff's affidavit in opposition to defendants' dismissal motion, he explains that prior to his disability, he earned about 90% of his income as a pulmonologist, and that he can no longer practice pulmonary medicine. Indeed, he explains that a pulmonologist is required to perform bronchoscopies, which he is now unable to do.

Further, from the record before us, it cannot be said as a matter of law that as to the remaining 10% of his income that he previously earned as an internist, he is still able to perform those "substantial and material duties" that he was performing at the time he became disabled. Initially, plaintiff explains that inasmuch as all pulmonologists are subspecialists within the specialty of internal medicine, all pulmonologists are by definition internists. However, *as an internist*, plaintiff can no longer even enter the ICU if any procedures involving radiation, such as fluoroscopies, are being performed. He explains that this prevents him from functioning competently as a treating physician. Further, he is now unable to treat patients in a hospital, because he becomes too easily fatigued.

Plaintiff adds that he receives no salary for certain other aspects of his work upon which defendants rely, such as his teaching position and that of Chairman of the hospital's Quality Assurance Committee.

The question therefore becomes whether those tasks that plaintiff is still demonstrably able to handle, such as seeing a limited number of patients who can make office visits, are substantial enough to amount to the ability to perform "the substantial and material duties" of his regular job or jobs as they existed prior to the onset of his illness. We consider this question to involve a factual determination, precluding dismissal of plaintiff's first, second and third causes of action at this juncture.

*Bad Faith Conduct*

Plaintiff's fifth and sixth causes of action allege a pattern of bad faith conduct and unfair practices on the part of defen-

dant insurer, and claim resulting emotional distress as well as economic and non-economic injury. The claim that defendant insurance company acted in bad faith is founded upon allegations that it undertook a conscious campaign calculated to delay and avoid payment on his claims, while having determined at the outset that it would deny coverage. He sets forth defendant's ongoing pattern of avoiding the claim, by which it would make multiple requests for additional documentation, upon receipt of which further documents would be demanded, after which plaintiff's claims file would then be transferred to a new examiner, who in turn would make more requests. Plaintiff adds that defendant waited more than two years to request or schedule an independent medical examination.

In seeking dismissal of the bad faith claim, defendant asserts that New York law does not recognize an independent tort cause of action for an insurer's alleged failure to perform its contractual obligations under an insurance policy, relying upon *Rocanova v Equitable Life Assur. Socy.* (83 NY2d 603) and *New York Univ. v Continental Ins. Co.* (87 NY2d 308).

It is correct that, to date, this State has maintained the traditional view that an insurer's failure to make payments or provide benefits in accordance with a policy of insurance constitutes merely a breach of contract, which is remedied by contract damages (*see, Rocanova, supra; New York Univ. v Continental, supra*). Yet, for some time, courts and commentators around the country have increasingly acknowledged that a fundamental injustice may result when a traditional contract analysis is applied to circumstances where insurance claims were denied despite the insurers' lack of a reasonable basis to deny them (*see generally*, Note, *The Availability of Excess Damages for Wrongful Refusal to Honor First Party Insurance Claims—An Emerging Trend* [hereinafter, *Availability of Excess Damages*], 45 Fordham L Rev 164 [1976]; Sykes, *"Bad Faith" Breach of Contract by First-Party Insurers*, 25 J Legal Studies 405, 408-409 [1996]; Harvey and Wiseman, *First Party Bad Faith: Common Law Remedies and a Proposed Legislative Solution*, 72 Ky LJ 141, 167-169 [1984]; Note, *First-Party Bad Faith: The Search for a Uniform Standard of Culpability*, 52 Hastings LJ 181, 187-189 [2000]).

Under the traditional analysis, because insurance policies are viewed as contracts for the payment of money only, the damages available for an insurer's failure to pay or provide benefits have been limited to the amount of the policy plus interest (*see, Availability of Excess Damages*, 45 Fordham L

Rev 164, 167, *supra*). Yet, an award, at the conclusion of litigation, of money damages equal to what the insurer should have paid in the first place, may not actually achieve the goal of contract damages, which is to place the plaintiff in the position he would have been in had the contract been performed (*see,* Calamari and Perillo, Contracts § 14.4 [4th ed 1998]).

Among other things, this concept of damages presumes that a plaintiff has access to an alternative source of funds from which to pay that which the insurer refuses to pay. This is frequently an inaccurate assumption. Additionally, an insured's inability to pay that which the insurer should be covering may result in further damages to the insured. Of course, limiting the potential damages to the policy amount also fails to address the potential for emotional distress or even further physical injury that may result where a plaintiff under the strain of serious medical problems is forced to also undertake the stress of extended litigation. What is more, if statutory interest is lower than that which the insurer can earn on the sums payable, the insurer has a financial incentive to decline to cover or pay on a claim (*see, Availability of Excess Damages,* 45 Fordham L Rev, *supra,* at 167).

In view of the inadequacy of contract remedies where an insurer purposefully declines or avoids a claim without a reasonable basis for doing so, a majority of states have responded to this need for a more suitable remedy by adopting a tort cause of action applicable to circumstances where an insurer has used bad faith in handling a policyholder's claim (*see, Chavers v National Sec. Fire & Cas. Co.,* 405 So 2d 1, 6 [Ala 1981]; *State Farm Fire & Cas. Co. v Nicholson,* 777 P2d 1152, 1156-1157 [Alaska 1989]; *Noble v National Am. Life Ins. Co.,* 128 Ariz 188, 189-190, 624 P2d 866, 867-868; *Aetna Cas. & Sur. Co. v Broadway Arms Corp.,* 281 Ark 128, 133-134, 664 SW2d 463, 465; *Gruenberg v Aetna Ins. Co.,* 9 Cal 3d 566, 510 P2d 1032; *Travelers Ins. Co. v Savio,* 706 P2d 1258, 1271 [Colo 1985]; *Buckman v People Express,* 205 Conn 166, 169-170, 530 A2d 596, 599; *White v Unigard Mut. Ins. Co.,* 112 Idaho 94, 99, 730 P2d 1014, 1019; *Erie Ins. Co. v Hickman,* 622 NE2d 515, 518-519 [Ind 1993]; *Dolan v Aid Ins. Co.,* 431 NW2d 790, 794 [Iowa 1988]; *Curry v Fireman's Fund Ins. Co.,* 784 SW2d 176, 178 [Ky 1989]; *State Farm Fire & Cas. Co. v Simpson,* 477 So 2d 242, 249 [Miss 1985]; *Lipinski v Title Ins. Co.,* 202 Mont 1, 14-15, 655 P2d 970, 977; *Braesch v Union Ins. Co.,* 237 Neb 44, 49-50, 464 NW2d 769, 773; *United Fire Ins. Co. v McClelland,* 105 Nev 504, 510-511, 780 P2d 193, 197; *State Farm Gen. Ins.*

*Co. v Clifton*, 86 NM 757, 759, 527 P2d 798, 800; *Corwin Chrysler-Plymouth v Westchester Fire Ins. Co.*, 279 NW2d 638, 643 [ND 1979]; *Hoskins v Aetna Life Ins. Co.*, 6 Ohio St 3d 272, 275-276, 452 NE2d 1315, 1319; *Christian v American Home Assur. Co.*, 577 P2d 899, 904 [Okla 1977]; *Bibeault v Hanover Ins. Co.*, 417 A2d 313, 319 [RI 1980]; *Nichols v State Farm Mut. Auto. Ins. Co.*, 279 SC 336, 340, 306 SE2d 616, 619; *Champion v United States Fid. & Guar. Co.*, 399 NW2d 320, 324 [SD 1987]; *Arnold v National County Mut. Fire Ins. Co.*, 725 SW2d 165 [Tex 1987]; *Anderson v Continental Ins. Co.*, 85 Wis 2d 675, 271 NW2d 368; *McCullough v Golden Rule Ins. Co.*, 789 P2d 855, 856-860 [Wyo 1990]; *see generally*, Comment, *Extra-Contractual Damages Stemming from a First-Party Insurer's Bad-Faith Breach: Will Minnesota Adopt the Tort or Contract Theory of Recovery?*, 26 Wm Mitchell L Rev 525, 531 n 36; Henderson, *The Tort of Bad Faith in First-Party Insurance Transactions After Two Decades*, 37 Ariz L Rev 1153).*

This cause of action is generally stated as a breach of the insurer's duty of good faith. Under this approach, where an insured demonstrates more than merely a denial of benefits promised under a policy of insurance, but instead, that the insurer's denial of the claim was deliberately made in bad faith, with knowledge of the lack of a reasonable basis for the denial, the insured may be entitled to compensatory tort damages.

Other states, troubled by imposing upon insurance companies a tort duty in such circumstances, have instead expanded the scope of contract remedies to encompass more than just the policy limits. These courts have instead held that the contract damages available, where an insurer fails to pay benefits to which the insured was entitled, may include foreseeable money damages beyond the policy limit (*see, Lawton v Great Southwest Fire Ins. Co.*, 118 NH 607, 614-615, 392 A2d 576, 581-582 [1978]; *Beck v Farmers Ins. Exch.*, 701 P2d 795, 798-799 [Utah 1985]; *Hayseeds, Inc. v State Farm Fire & Cas.*, 177 W Va 323, 331, 352 SE2d 73, 81 [1986]; *Marquis v Farm Family Mut. Ins. Co.*, 628 A2d 644 [Me 1993]; *Pickett v Lloyd's*, 131 NJ 457, 621 A2d 445 [1993]). While some states would exclude compensation for mental or emotional distress unrelated to physical injury, caused by the denial of a claim (*see, e.g., Tackett v State Farm Fire & Cas. Ins. Co.*, 653 A2d 254 [Del 1995]; *Lawton v Great Southwest Fire Ins. Co., supra*, at 615), others include the possibility of consequential damages for mental distress or

---

\* Other states have adopted statutes to the same effect (*see*, Fla Stat Annot § 624.155; 42 Pa Cons Stat § 8371).

aggravation and inconvenience (*see, e.g., Beck v Farmers Ins. Exch., supra,* at 802; *Hayseeds, supra,* at 331). Of course, such non-economic losses would be compensable only in circumstances where they were a foreseeable result of a breach at the time the policy was entered into.

We are unwilling to adopt the widely accepted tort cause of action for "bad faith" in the context of a first-party claim, because we recognize that to do so would constitute an extreme change in the law of this State. Essentially, we accept the more conservative approach adopted by the minority of jurisdictions that "the duties and obligations of the parties [to an insurance policy] are contractual rather than fiduciary" (*Beck v Farmers Ins. Exch., supra,* at 800). However, as this Court has recently acknowledged, "an insured should have an adequate remedy to redress an insurer's bad faith refusal of benefits under its policy" (*see, Batas v Prudential Ins. Co.,* 281 AD2d 260, 265). Providing such a remedy cannot be accomplished where a policyholder who makes out a claim of bad faith avoidance of a valid insurance claim may only obtain a judgment for the face amount of the policy.

Therefore, in order to ensure the availability of an appropriate and sufficient remedy, we adopt the reasoning of the *Beck* court that

> "there is no reason to limit damages recoverable for breach of a duty to investigate, bargain, and settle claims in good faith to the amount specified in the insurance policy. Nothing inherent in the contract law approach mandates this narrow definition of recoverable damages. Although the policy limits define the amount for which the insurer may be held responsible in performing the contract, they do not define the amount for which it may be liable upon a breach." (*Beck v Farmers Ins. Exch.,* 701 P2d 795, 801, *supra.*)

We consider the need for this form of damages to be apparent. The problem of dilatory tactics by insurance companies seeking to delay and avoid payment of proper claims has apparently become widespread enough to prompt most states to respond with some sort of remedy for aggrieved policyholders. To term such a claim "unique to these parties" as the dissent does, and therefore not warranting a remedy beyond that traditionally available for an insurer's failure to pay on a claim, is to utterly ignore this fact.

As to the dissent's suggestion that the claim of bad faith is undermined by our finding that an issue of fact exists as to

whether plaintiff is entitled to coverage at all, we must recall that we have before us a dismissal motion under CPLR 3211. Just as it may ultimately be found that plaintiff was entitled to coverage, it may also be found, as he alleges, that the insurer's delay, avoidance and ultimate rejection of the claim was based not upon a reasonable assessment of the situation but rather, solely upon its own financial self-interest. For this Court to say, in the context of a motion under CPLR 3211, that the denial of benefits was reasonable as a matter of law, is to reject out of hand plaintiff's factual assertions and to accept the facts as defendant insurer alleges them to be.

By the same token, the dissent's conclusion that plaintiff is partially to blame for the delay in the processing of his claim is inappropriate in the context of this motion, in which we are required to accept the facts as plaintiff alleges them to be.

For all the foregoing reasons, while plaintiff's cause of action alleging bad faith conduct on the part of the insurer cannot stand as a distinct tort cause of action, we conclude that its allegations may be employed to interpose a claim for consequential damages beyond the limits of the policy for the claimed breach of contract.

*Unfair Practices*

Plaintiff's sixth cause of action, as amplified by the affidavits he submits in opposition to the motion, states a cognizable claim for unfair practices under General Business Law § 349 (*see, Gaidon v Guardian Life Ins. Co.*, 94 NY2d 330). While plaintiff cannot now determine, at this pre-discovery phase, whether this same alleged practice has been aimed at other policyholders besides himself so as to have a " 'broader impact on consumers at large' " (*see, Gaidon, supra*, at 344, quoting *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 25), in the context of this dismissal motion, the claimed conduct may be said to fall within the parameters of an unfair or deceptive practice. The term unfair or deceptive practices has been defined as representations or omissions " 'likely to mislead a reasonable consumer acting reasonably under the circumstances' " (*Karlin v IVF Am.*, 93 NY2d 282, 294, quoting *Oswego Laborers' Local, supra*, at 26; *accord, Gaidon, supra*, at 344). The allegation that the insurer makes a practice of inordinately delaying and then denying a claim without reference to its viability, may be said to fall within the parameters of that definition. Certainly, it goes beyond "a private contract dispute as to policy coverage," which the Court of Appeals differentiated from a deceptive practices claim in *Gaidon* (*supra*, at 344).

In addition, in contrast to *New York Univ. v Continental Ins. Co.* (87 NY2d 308, 321, *supra*), here the issuance and handling of the particular insurance policies constituted "consumer-oriented conduct." In *New York Univ.* (*supra*), the insured was a major university acting through its director of insurance, and the policy was not standard, but was tailored to meet the university's wishes and requirements, while the present case concerns a standard-issue policy provided to an individual consumer.

Finally, plaintiff's seventh and eighth causes of action, for fraud and negligent infliction of emotional distress, were properly dismissed. Plaintiff's seventh cause of action, claiming fraud and fraudulent inducement, asserted against defendant insurance brokers as agents of defendant insurer, cannot stand, in view of the language of the policies (*see, Gaidon v Guardian Life Ins. Co.*, *supra*, 94 NY2d, at 349-350). His eighth cause of action for negligent infliction of emotional distress was also properly dismissed, since his allegations do not assert conduct that was so outrageous and extreme as to support a claim for emotional distress, an element necessary to establish either intentional or negligent infliction of emotional distress (*see, Dillon v City of New York*, 261 AD2d 34, 41). With respect to the fourth cause of action, for breach of contract for denial of residual or partial disability benefits, the demands for punitive damages and attorneys' fees were properly dismissed.

Accordingly, the order of the Supreme Court, New York County (Jane Solomon, J.), entered on or about November 5, 1999, which granted defendant-respondent's motion to dismiss the complaint except for the fourth cause of action, should be modified, on the law, to deny the motion with respect to plaintiff's first, second, third, fifth and sixth causes of action and to reinstate those causes of action, and otherwise affirmed, without costs.

ANDRIAS, J. (dissenting in part). I agree that, although defendants' documentary evidence tends to support the IAS court's finding that, even though plaintiff was unable to perform bronchoscopies and other radiology-using procedures during the relevant time period, he was able to practice internal medicine as well as aspects of pulmonary medicine that do not necessitate exposure to radiation, there are questions of fact presented, which cannot be determined as a matter of law on this dismissal motion, as to whether plaintiff was "totally disabled" within the meaning of the three subject in-

surance policies, each of which, read as a whole, provides that plaintiff is to be considered totally disabled only if he cannot perform any of the substantial and material duties of both his regular jobs, pulmonary medicine and internal medicine (*compare, Taterka v Nationwide Mut. Ins. Co.*, 91 AD2d 568, *affd* 59 NY2d 743). Thus, plaintiff's claims for breach of contract should not have been dismissed pursuant to CPLR 3211 (a) (1).

However, plaintiff's remaining claims, sounding in tort, for bad faith and unfair practices, fraud and fraudulent inducement, and negligent infliction of emotional distress, were properly dismissed pursuant to CPLR 3211 (a) (7) since, giving the complaint every favorable intendment, plaintiff is "merely seeking to enforce [his] bargain" (*see, New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 316). Moreover, plaintiff could not have been defrauded or fraudulently induced to purchase policies the plain terms of which could have been readily ascertained upon a reading of their clear and unambiguous language, and his allegations do not allege conduct that was so outrageous and extreme as to support a claim for emotional distress (*see, Dillon v City of New York*, 261 AD2d 34, 41).

Plaintiff's tort claims are based upon his allegations that, even though he provided all requested documentation, New York Life continued to delay in determining his claim; that he made a reasonable settlement demand, which New York Life wrongfully and unjustifiably refused to accept; and, that New York Life's dilatory tactics in delaying processing of his claim included shuttling plaintiff from employee to employee. Such allegations, however, describe what "is essentially a 'private' contract dispute over policy coverage and the processing of a claim which is unique to these parties, not conduct which affects the consuming public at large" (*see, New York Univ. v Continental Ins. Co., supra*, 87 NY2d, at 321). Militating against any causes of action based upon New York Life's alleged bad faith in processing and denying plaintiff's claim is our finding that there are issues of fact as to whether plaintiff's ailments qualify him for coverage under the subject policies. The majority questions the validity of the foregoing statement in the context of a motion to dismiss. However, such finding is significant in that it undermines his claim of bad faith denial of benefits by demonstrating that despite defendant's thorough investigation and evaluation of plaintiff's claim there is still uncertainty as to its merits. As noted in *Pavia v State Farm Mut. Auto. Ins. Co.* (82 NY2d 445, 455), encouraging premature

settlement of claims would contravene as insurer's "contractual right and obligation of thorough investigation."

Plaintiff claims that New York Life's conduct constitutes a public wrong in that he was in a weaker bargaining position than New York Life because of its superior knowledge and his reliance upon the Kho defendants, who sold him the policies. He also attempts to distinguish *Continental Insurance (supra)* on the ground that there the insured received expert representation and advice in the procurement of the policy. Such arguments are unavailing inasmuch as plaintiff's dealings with the Khos and New York Life were at arm's length and there is no allegation, let alone any evidence, of a confidential relationship sufficient to justify any such reliance (*see generally, Batas v Prudential Ins. Co.*, 281 AD2d 260; *Gaidon v Guardian Life Ins. Co.*, 255 AD2d 101, *mod on other grounds* 94 NY2d 330, *upon remittitur* 272 AD2d 60). Nor, is there any basis in certain dicta from *Batas (supra)* or in cases from sister states, which were neither cited nor relied upon by plaintiff at nisi prius or on appeal, for disregarding stare decisis and deviating from the Court of Appeals clear holding, in *Continental Insurance (supra)*, that a similar claim based on an alleged breach of the implied covenant of good faith and fair dealing should be dismissed as duplicative of a cause of action for breach of contract. "[T]he use of familiar tort language in the pleading does not change the cause of action to a tort claim in the absence of an underlying tort duty sufficient to support a claim for punitive damages" (*id.* at 319-320 [citations omitted]).

Any suggestion by plaintiff that his bad faith claim has much in common with the law regarding insurers' bad faith refusal to settle liability claims and his reliance upon *Pavia (supra)* is unavailing.

Plaintiff's claims of bad faith and unfair practices are based solely upon his allegation that defendant undertook a conscious campaign to delay rendering a decision on his claims. Such allegations are simply insufficient to "establish that the insurer's conduct constituted a 'gross disregard' of the insured's interests—that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer * * *. In other words, a bad-faith plaintiff must establish that the defendant insurer engaged in a pattern of behavior evincing a conscious or knowing indifference to the probability that an insured would be held personally accountable for a large judgment if a settlement offer within the policy limits were not accepted" (*Pavia, supra*, 82 NY2d, at 453-454).

*Pavia* was specifically limited to the well-settled principle that an insurer may be held liable for the breach of its duty of " 'good faith' in defending and settling claims over which it exercise[d] exclusive control on behalf of its insured" (*id.* at 452 [citations omitted]). The Court specifically rejected, as a matter of law, the idea of a "bad faith" claim based solely upon an insurer's failure to respond to a time-limited settlement offer, which came at a relatively early point in the litigation, and its overall delay in offering the policy limits. In so ruling, the Court held that "[p]ermitting an injured plaintiff's chosen time-table for settlement [or in this case payment of the claim] to govern the bad-faith inquiry would promote the customary manufacturing of bad-faith claims." (*id.* at 455).

As to claims of the insurer's delay in evaluating whether or not to accept a time-limited settlement offer, the Court stated: "That defendant could have acted more expeditiously does not convert inattention into a gross disregard for the insured's rights, particularly where, as here, there is no contention that the insurer failed to carry out an investigation, to evaluate the feasibility of settlement * * * or to offer the policy limits before trial after the weakness of the insured's litigation position was clearly and fully assessed" (*id.*). Thus, the Court essentially held that, in order to satisfy the necessary "gross disregard for the insured's rights" standard, a plaintiff would have to allege and ultimately prove that the insurer unreasonably "failed to carry out an investigation," failed to "evaluate" the feasibility of settlement (in this case plaintiff's claim), or failed to offer the policy limits (in this case pay plaintiff's claim), after the merits of the claim were "clearly and fully assessed." Here, on the other hand, plaintiff's complaint is really the opposite: that defendant took too much time in investigating and evaluating his claim before denying it, after its merits were "clearly and fully assessed."

Because plaintiff's complaint fails to state a cognizable "bad faith" cause of action, there are no relevant factual issues. We would note, however, without deciding the issue, that plaintiff does not appear to be entirely blameless with regard to any delay in processing his claim. The record reflects that plaintiff's proof of claim was submitted to defendant on February 13, 1997; that his Confirmation of Interview form is dated November 25, 1997; that copies of plaintiff's personal income tax returns for the years 1990 through 1996 were provided to defendant on December 2, 1997; that, at defendant's request, additional financial information regarding plaintiff was submit-

ted on January 27, 1998; that an independent medical examination of plaintiff was conducted sometime before July 20, 1998; that the parties met on June 16, 1998, at which time plaintiff was "willing to provide you with this additional time to review the claim" based upon defendant's assurance that a determination of plaintiff's claim would be made no later than July 15, 1998; and, that, although the July 15th deadline was not met, plaintiff was notified, by letter dated July 28, 1998, that, under the terms of the relevant polices he was not entitled to total disability benefits because his earnings for 1996 were significantly greater than in any of the five years immediately preceding the onset of his disability. Thus, contrary to plaintiff's attorney's argument in his January 6, 1998 letter that the issue was medical not financial, the financial aspects of his claim appear to have been determinative. There is also some indication in his attorney's correspondence, where claims of bad faith were raised as early as his January 6, 1998 letter to defendant, just over a month after plaintiff provided his income tax returns, that this is the type of manufactured claim warned against in *Pavia*.

With respect to the fourth cause of action that was not dismissed, for breach of contract for denial of residual or partial disability benefits, plaintiff's demands for punitive damages and attorneys' fees were properly dismissed, since the allegations support only a claim for breach of contract (*see, Continental Ins., supra*, at 315-316, 324).

Accordingly, I would modify the order only to the extent of denying the motion with regard to the first, second and third causes of action.

MAZZARELLI and WALLACH, JJ., concur with SAXE, J.; TOM, J. P., and ANDRIAS, J., dissent in part in a separate opinion by ANDRIAS, J.

Order, Supreme Court, New York County, entered on or about November 5, 1999, modified, on the law, to deny defendant-respondent's motion to dismiss the complaint with respect to the first, second, third, fifth and sixth causes of action and to reinstate those causes of action, and otherwise affirmed, without costs.