Howard SICHEL, Plaintiff,

v.

**UNUM PROVIDENT CORPORATION**
and The Paul Revere Life Insurance
Company, Defendants.

No. 01 Civ. 6880(SAS).

United States District Court,
S.D. New York.

April 29, 2002.

Robert J. Tolchin, Jaroslawicz & Jaros, New York City, for Plaintiff.

Adam A. Alster, Robert T. Pindulic, Wright, Pindulic & Hamelsky, L.L.P., Paramus, NJ, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

On June 21, 2001, Howard Sichel sued UnumProvident Corporation ("Unum"), The Paul Revere Life Insurance Company ("Paul Revere"), and Dr. Richard M. Bochner for: 1) breach of contract, 2) fraud, 3) negligence on the part of Dr. Bochner, and 4) violation of New York General Business Law ("GBL") § 349. Unum and Paul Revere now move to dismiss Sichel's second and fourth claims[1] pursuant to Federal Rule of Civil Procedure 12(c) and to dismiss Sichel's requests for punitive and treble damages. Sichel seeks leave to amend his Complaint. Defendants also move to impose sanctions on Sichel for attorneys' fees and expenses pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"). For the reasons stated below, defendants' motion to dismiss is granted in its entirety. Sichel's motion for leave to amend his Complaint is denied in part and granted in part. Defendants' motion for Rule 11 sanctions is denied.

## I. FACTUAL BACKGROUND

Sichel alleges that he suffered an injury on March 10, 1996, that left him unable to continue in his former occupation as a chiropractor. *See* Complaint ("Compl.") ¶¶ 6, 8. At the time of his injury, Sichel held disability policies from both defendants. *See id.* ¶ 7; Def. Mem. at 1. He then filed claims under these policies. *See* Compl. ¶¶ 8–9; Def. Mem. at 1. After a medical examination by Dr. Bochner on March 16, 1998, Paul Revere and Unum

---

1. Sichel's third claim against defendant Dr. Bochner was dismissed without prejudice on October 17, 2001 by stipulation of the parties. *See* Stipulation Discontinuing Action against Richard M. Bochner, Ex. 5 to Defendants' Memorandum of Law in Support of Defendant Paul Revere's Motion to Dismiss ("Def.Mem.").

began making disability payments to Sichel. *See* Compl. ¶¶ 10, 13; Def. Mem. at 1.

After this examination, however, Paul Revere secretly videotaped Sichel's activities and then asked Dr. Bochner to reevaluate his injuries. *See* Compl. ¶¶ 11–12; Def. Mem. at 1. Dr. Bochner examined Sichel again on July 27, 1999, and determined that he was not disabled. *See* Compl. ¶¶ 12–14; Def. Mem. at 1. Paul Revere and Unum ceased making disability payments in August 1999. *See* Compl. ¶¶ 10, 16; Def. Mem. at 1.

## II. LEGAL STANDARD

The standard applicable to a motion to dismiss under Rule 12(c) is the same as that under Rule 12(b)(6). *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir.2001). Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) "is proper only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Strougo v. Bassini*, 282 F.3d 162, 167 (2d Cir.2002) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir.1999)). The task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir.2000) (internal quotation marks omitted).

To rule on a 12(b)(6) motion, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the nonmoving party's favor. *See Kalnit v. Eichler*, 264 F.3d 131, 137–38

(2d Cir.2001). Nevertheless, to survive a motion to dismiss, "[plaintiff's] claims must be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'" *Friedl v. City of New York*, 210 F.3d 79, 85–86 (2d Cir.2000) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983)). Dismissal therefore is "appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Friedl*, 210 F.3d at 83 (quotation marks omitted).

## III. DISCUSSION

### A. Sichel's Second Claim

■ In his second cause of action, Sichel claims that defendants, including Dr. Bochner, "conspired to defraud" him.[2] *See* Compl. ¶¶ 23–31. Sichel alleges that the insurance companies agreed on a "scheme" with Dr. Bochner whereby they would hire him to perform a medical examination on Sichel. *Id.* ¶ 24. Dr. Bochner would then diagnose Sichel as not disabled so that the insurance companies would no longer be required to make disability payments. *See id.* ¶¶ 24–26.

### 1. Fraud

Under New York law, to plead a case of fraud, "the plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996). In

---

**2.** As defendants point out, and Sichel does not dispute, "New York does not recognize conspiracy as an independent tort." *Hickey v. Travelers Ins. Co.*, 158 A.D.2d 112, 558 N.Y.S.2d 554, 557 (2d Dep't 1990); *see also* *Brenner v. Am. Cyanamid Co.*, 288 A.D.2d 869, 732 N.Y.S.2d 799, 800 (4th Dep't 2001). Accordingly, I will address only the substantive allegations of fraud and bad faith.

his Complaint, Sichel alleges that Dr. Bochner "issue[d] a false report, based on no rational medical basis, claiming [he] was able to work in his profession and occupation, and the insurance carrier defendants then used this as a means of cutting off [Sichel's] benefits." Compl. ¶ 27. Sichel does not allege, however, that he relied on this misrepresentation by the insurers, or that defendants' alleged misrepresentation was intended to induce him to rely on it.

New York law "preclude[s] fraud actions where the 'only fraud charged relates to a breach of contract.'" *Lomaglio Assoc., Inc., v. LBK Mktg. Corp.*, 892 F.Supp. 89, 94 (S.D.N.Y.1995) (quoting *Miller v. Volk & Huxley, Inc.*, 44 A.D.2d 810, 355 N.Y.S.2d 605 (1st Dep't 1974)). "'[A] contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations.'" *Hanft Byrne Raboy & Partners, Inc. v. Matsushita Elec. Corp. of America*, No. 00 Civ. 2990, 2001 WL 456346, at *5 (S.D.N.Y. May 1, 2001) (quoting *Rocanova v. Equitable Life Assurance Soc'y*, 83 N.Y.2d 603, 614, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994)). "General allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support" a claim for fraud. *New York Univ. v. Cont'l Ins. Company*, 87 N.Y.2d 308, 318, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995). In *New York University*, plaintiff alleged that its insurance providers "engaged in a 'sham' investigation to perpetuate their allegedly fraudulent scheme." *Id.* at 319, 639 N.Y.S.2d 283, 662 N.E.2d 763. The New York Court of Appeals held that this allegation "merely raise[d] a question for the fact finder determining the breach of contract claim," instead of creating an independent cause of action for

fraud. *Id.* Similarly, Sichel's second claim is more accurately characterized as a bad faith denial of coverage than an action for fraud.[3]

### 2. Bad Faith

In *New York University*, the Court of Appeals established a four-part test for pleading a claim of bad faith denial of coverage. The four-part test is as follows:

(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of [an] egregious nature . . . ; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally. Where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court considering a defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract.

*New York Univ.*, 87 N.Y.2d at 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (citations omitted). The claim in that case involved bad faith denial of coverage under an insurance policy. The court held that such a claim did not constitute an independent tort but was "duplicative of the first cause of action for breach of contract and should have been dismissed." *Id.* at 319–20, 639 N.Y.S.2d 283, 662 N.E.2d 763.

Courts in this District have followed the reasoning of *New York University*. *See, e.g., American Nat'l Fire Co. v. Mirasco, Inc.*, 143 F.Supp.2d 372 (S.D.N.Y.2001) (dismissing punitive damages claim for bad faith denial of coverage as not constituting an independent tort); *Brown v. Paul Revere Life Ins. Co.*, No. 00 Civ. 9110, 2001 WL 1230528, at *4–*5 (S.D.N.Y. Oct. 16, 2001) (same). As in the present case, the

---

3. In his Complaint, Sichel alleges only that the "scheme" to "defraud" him "violated common decency and the laws of the State of New York," without further specificity, and asks for punitive damages. Compl. ¶¶ 23–24, 29.

plaintiff in *Brown* "allege[d] that defendant breached its contract intentionally, pursuant to an alleged policy of breaking disability insurance contracts in order to avoid the payment of full benefits." 2001 WL 1230528, at *4. The court held that the insurer's actions did "not allege a tort independent of the contract" and therefore were "indistinguishable from similar allegations found to be insufficient in *New York Univ[ersity]*." *Id.* Moreover, one court in this District has held that a claim for bad faith denial of coverage can *never* be an independent cause of action. *See Wiener v. Unumprovident*, 202 F.Supp.2d 116, 123 (S.D.N.Y.2002) ("Under New York law, an independent tort action for bad faith denial of coverage is not recognized.").

Sichel responds by citing one case—*Acquista v. New York Life Ins. Co.*, 285 A.D.2d 73, 730 N.Y.S.2d 272 (1st Dep't 2001)—as support for his bad faith claim and his contention that he is entitled to punitive damages. In *Acquista*, plaintiff doctor sued his disability insurance providers after they rejected his claims for benefits, alleging, *inter alia*, breach of contract, bad faith, unfair practices, and fraud. *See id.* at 273. The bad faith claim was predicated on the insurance company's repeated and willful delays in processing his claim. *See id.* at 275. The appellate court reversed the trial court's dismissal of plaintiff's bad faith claim and held that where "the insurer's denial of the claim was deliberately made in bad faith, with knowledge of the lack of a reasonable basis for the denial," consequential damages could be awarded. *Id.* at 277–78. Consistent with precedent, the court held that "plaintiff's cause of action alleging bad faith conduct on the part of the insurer cannot stand as a distinct tort cause of action." *Id.* at 278. The court then held that the allegation instead "may be employed to interpose a claim for consequential damages beyond the limits of the policy for the claimed breach of contract." *Id.* at 278–79.

■ *Acquista* itself therefore dictates that Sichel's second claim for bad faith conduct must be dismissed under the *New York University* test, for such a claim "cannot stand as a distinct tort cause of action." *Id.* at 278. *Acquista* holds only that a plaintiff may be awarded consequential damages for losses stemming from a deliberate delay in processing claims. Consequential damages, however, are not the same thing as punitive damages, and they are to be awarded in a contract action, not a tort action. The *Acquista* court declared itself "unwilling to adopt the widely accepted tort cause of action for 'bad faith' . . . because [it] recognize[d] that to do so would constitute an extreme change in the law of this State." Id. If Sichel wishes to recover consequential damages, he must do so through his first cause of action for breach of contract.

### 3. Conclusion

Because Sichel's second claim does not allege an independent tort, he cannot satisfy the *New York University* test. Therefore, defendants' motion to dismiss the second cause of action is granted.

### B. Fourth Claim

In his fourth cause of action, Sichel claims that defendants violated section 349 of the GBL. *See* Compl. ¶¶ 38–44. Sichel alleges that "defendants have entered into a scheme to defraud the public and the plaintiff with respect to the sale of insurance and denying claims" and that "defendants' conduct violates § 349 of the General Business Law and constitutes fraud upon the plaintiff and the public." *Id.* ¶¶ 39, 41.

■ Section 349 is designed to address "broad consumer-protection concerns."

*Gaidon v. Guardian Life Ins. Co. of Am.,* 94 N.Y.2d 330, 343, 704 N.Y.S.2d 177, 725 N.E.2d 598 (1999). Section 349 claims "have been aptly characterized as similar to fraud claims," but "are critically different." *Id.* A plaintiff bringing claims under section 349 must, "at the threshold, charge conduct that is consumer oriented.... [D]efendant's acts or practices must have a broad impact on consumers at large." *New York Univ.,* 87 N.Y.2d at 320, 639 N.Y.S.2d 283, 662 N.E.2d 763; *see also MaGee v. Paul Revere Life Ins. Co.,* 954 F.Supp. 582, 586 (E.D.N.Y.1997) ("[T]he injury must be to the public generally as distinguished from the plaintiff alone."); *Gaidon,* 94 N.Y.2d at 343, 704 N.Y.S.2d 177, 725 N.E.2d 598 ("As a threshold matter, in order to satisfy General Business Law § 349 plaintiff's claims must be predicated on a deceptive act that is 'consumer oriented.'" (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 24–25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995))). Although this requirement has been construed fairly liberally, *see State of New York v. Feldman,* 210 F.Supp.2d 294, 301–02 (S.D.N.Y.2002), "'private contract disputes unique to the parties ... [do] not fall within the ambit of the statute.'" *New York Univ.,* 87 N.Y.2d at 320, 639 N.Y.S.2d 283, 662 N.E.2d 763 (quoting *Oswego,* 85 N.Y.2d at 25, 623 N.Y.S.2d 529, 647 N.E.2d 741). The question is whether defendants' alleged fraudulent acts were "consumer oriented" or directed at Sichel alone.

In *MaGee,* the court dismissed a section 349 action very similar to this one for alleging only a "garden variety breach of contract action" instead of a "national policy." *MaGee,* 954 F.Supp. at 586–87. In *New York University,* plaintiff's section 349 claim was dismissed because the dispute was "essentially a 'private' contract dispute over policy coverage and the processing of a claim which is unique to these parties, not conduct which affects the consuming public at large." 87 N.Y.2d at 321, 639 N.Y.S.2d 283, 662 N.E.2d 763. *Gaidon,* on the other hand, concerned a "marketing scheme" to convince prospective customers to buy their "vanishing date" insurance policies through deceptive sales presentations. 94 N.Y.2d at 344–45, 704 N.Y.S.2d 177, 725 N.E.2d 598. As a result of these allegations, the Court of Appeals reversed the trial court's dismissal of the section 349 claim. *See id.* at 348, 704 N.Y.S.2d 177, 725 N.E.2d 598.

The present case is more similar to *New York University* and *MaGee* than it is to *Gaidon.* The alleged "scheme was to obtain a physician who would falsely state the plaintiff was able to work in his occupation, no matter how spurious that opinion might be, and use this as a means of avoiding paying the plaintiff his benefits." Compl. ¶ 24. While Sichel claims that this was "a scheme to defraud the public," *id.* ¶ 39, the facts alleged in the Complaint deal only with his dispute with his insurers over the legitimacy of Dr. Bochner's examination and diagnosis. The Complaint does not include any facts tending to establish a "national policy", *MaGee,* 954 F.Supp. at 587, or an "extensive" scheme that "had a broad impact on consumers at large," *Gaidon,* 94 N.Y.2d at 344, 704 N.Y.S.2d 177, 725 N.E.2d 598. The injury alleged is to Sichel alone, not to "the public," *MaGee,* 954 F.Supp. at 586. It is "essentially a 'private' contract dispute over policy coverage and the processing of a claim." *New York Univ.,* 87 N.Y.2d at 321, 639 N.Y.S.2d 283, 662 N.E.2d 763.

In a separate accusation, Sichel alleges that "the insurance carrier defendants ... would hire certain doctors who had agreed ... that they would find persons not disabled, or prepare a purported medical opinion which would assist the insurance carriers in not paying benefits." Compl. ¶ 24. These claims, however, are not

"supported by specific and detailed factual allegations" but are "stated in wholly conclusory terms." *Friedl*, 210 F.3d at 86 (quotation marks omitted). They simply take the facts of Sichel's second claim and assert that the defendants do this all the time. There is no factual support offered for this allegation.

■ Finally, even if Sichel met the requirement of alleging conduct that is consumer-oriented, he must also allege that defendants engaged in a deceptive act or practice. *See Gaidon*, 94 N.Y.2d at 344, 704 N.Y.S.2d 177, 725 N.E.2d 598. A deceptive act or practice is "a representation or omission likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* (quotation marks and citations omitted). Sichel's Complaint simply alleges that "defendants' scheme is set forth above," referring to his second cause of action. Compl. ¶ 40. Sichel fails to state a claim for fraud because the misrepresentation he alleges was the false medical report of Dr. Bochner. Here, again, Sichel only alleges that defendants hired multiple doctors to prepare multiple false medical reports on other policyholders. *See id.* ¶ 24. As with his own fraud claim, Sichel has not alleged that the public relied on the insurers' alleged misrepresentations, or that their misrepresentations were intended to induce the public to rely on them.

Plaintiffs in *Gaidon* alleged that their insurers "lured them into purchasing policies" by making misleading promises. 94 N.Y.2d at 344, 704 N.Y.S.2d 177, 725 N.E.2d 598. The court held that this activity constituted a deceptive act or practice and upheld plaintiffs' section 349 claim. *See id.* at 345–48, 704 N.Y.S.2d 177, 725 N.E.2d 598. The critical difference here is that Sichel has not alleged that the insurers made false promises intended to

"lure [consumers] into purchasing policies." *Id.* at 344, 704 N.Y.S.2d 177, 725 N.E.2d 598. Rather, he alleges that the insurers created false reports which they then used to cancel existing policies. The "scheme" alleged in the Complaint involved only contractual breaches made in bad faith.

Sichel has failed to state a claim for relief under section 349 of the GBL. Accordingly, defendants' motion to dismiss Sichel's fourth claim is granted.

### C. Plaintiff's Request to Amend His Complaint

Sichel requests the opportunity to file an amended complaint "to make out a claim in accordance with *Acquista.*"[4] Memorandum of Law in Opposition to Defendant's Motion for Partial Dismissal Pursuant to Rule 12(c) ("Pl.Opp.") at 8. A complaint may be amended after an answer has been filed "only by leave of the court;" this leave shall be "freely granted when justice so requires." Fed.R.Civ.P. 15(a).

■ As previously discussed, *Acquista* does not allow a plaintiff to allege an independent cause of action based on bad faith denial of coverage; it simply allows a plaintiff to seek consequential damages in addition to compensatory damages in a breach of contract claim. *See* 730 N.Y.S.2d at 278–79. Nor does any other New York case hold that Sichel may maintain an independent cause of action for bad faith breach of contract. Dismissal of a claim without leave to amend is appropriate "if the amendment would be futile." *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 69 (2d Cir.2002). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning*

4. Sichel has not submitted a proposed Amended Complaint.

*Appeals,* 282 F.3d 83, 88 (2d Cir.2002). Amending Sichel's complaint to state a bad faith denial of coverage claim would be futile because there is no such claim under New York law. Therefore, permission to amend this count is denied and the second claim is dismissed with prejudice.

As for the fourth claim, *Acquista* itself adds nothing new to the law governing section 349. In that case, the court simply found that plaintiff had properly stated a cause of action under section 349. *See Acquista,* 730 N.Y.S.2d at 279. Sichel has not. This failure of pleading does not mean, however, that he will never be able to allege a violation of section 349. He may be able to allege conduct that is consumer oriented and then describe a scheme centered on deceptive acts or practices. *See Gaidon,* 94 N.Y.2d at 344, 704 N.Y.S.2d 177, 725 N.E.2d 598. To do so, however, he must set forth "specific" and "detailed" allegations supported by the requisite facts. *Friedl,* 210 F.3d at 86. Mere conclusory allegations of a broad, consumer-oriented scheme will not be enough. *Id.* While Sichel's request to amend his complaint as to his fourth claim is granted, he must comply with the strictures of Rule 11 in framing that complaint.

### D. Defendants' Request for Rule 11 Sanctions

Defendants additionally request that this court impose sanctions for attorneys' fees and expenses pursuant to Rule 11(b)(3) for the costs of this motion. Rule 11(b)(3) is violated where a party falsely represents to the court that "the allegations and other factual contentions [he has made] have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11(b)(3). Rule 11(b)(3) sanctions are not imposed " 'unless a particular allegation is utterly lacking in support.' " *In re Highgate Equities, Ltd.,* 279 F.3d 148, 154 (2d Cir.2002) (quoting *O'Brien v. Alexander,* 101 F.3d 1479 (2d Cir.1996)). Courts generally look for "direct falsehood" in a filing. *Chum Ltd. v. Lisowski,* No. 98 Civ. 5060, 2001 WL 243541, at *14 (S.D.N.Y. Mar. 12, 2001).

Sichel comes very close to this line with his second claim. He has misread *Acquista* and cites it as support for a cause of action that it clearly rejects. *See* 730 N.Y.S.2d at 278 ("[P]laintiff's cause of action alleging bad faith conduct on the part of the insurer cannot stand as a distinct tort cause of action."). His legal theory, however, is not frivolous. The *Acquista* court recognized the "inadequacy of contract remedies where an insurer purposefully declines or avoids a claim without a reasonable basis for doing so," and noted that "a majority of states have responded to this need ... by adopting a tort cause of action ... where an insurer has used bad faith in handling a policyholder's claim." *Id.* at 276. Moreover, "[o]ther states, troubled by imposing upon insurance companies a tort duty in such circumstances, have instead expanded the scope of contract remedies to encompass more than just the policy limits." *Id.* at 277. In all, *Acquista* identifies thirty-one states that have recognized some form of additional relief for plaintiffs subjected to bad faith denials of coverage. *See id.* at 276–78. *Acquista* also declared "the need for [an additional imposition] of damages to be apparent. The problem ... has apparently become widespread enough to prompt most states to respond with some sort of remedy for aggrieved policyholders." *Id.* at 278. Sichel's claim therefore is not " 'utterly lacking' " in support. *In re Highgate Equities,* 279 F.3d at 154.

Nor are sanctions appropriate for failure to state a cause of action in Sichel's fourth claim. Sichel failed to properly allege a violation of section 349 of the GBL

and offered no evidentiary support for such a violation. This does not mean, however, that he will never be able to properly state such a claim or offer support for it. Rule 11 sanctions should be imposed with caution, "even where the violation is clear." *Chauvet v. Local 1199, Drug, Hosp., & Health Care Employees Union*, No. 96 Civ. 2934, 1996 WL 665610, at *17 (S.D.N.Y. Nov. 18, 1996). Sichel is permitted to file an Amended Complaint on this count; sanctions at this time would be premature.

## IV. CONCLUSION

Unum and Paul Revere's motion to dismiss Sichel's second and fourth claims is granted. Sichel's request to amend his complaint is denied in part and granted in part. Defendants' request for sanctions is denied. A status conference is set for May 21, 2002, at 4:30 p.m.

SO ORDERED.