[726 NYS2d 60]

WALTER SCOTT et al., on Behalf of Themselves and All Others Similarly Situated, Respondents, v BELL ATLANTIC CORPORATION, Now Known as VERIZON COMMUNICATIONS, INC., et al., Appellants.

First Department, May 10, 2001

### APPEARANCES OF COUNSEL

*Jason L. Solotaroff* of counsel, New York City (*Mark S. Kaufman* and *Joshua N. Rubin* on the brief; *Law Offices of Mark S. Kaufman, Stamell & Schager, L. L. P.*, and *Abbey Gardy & Squitieri, L. L. P.*, attorneys), for respondents.

*Guy Miller Struve* of counsel, New York City (*Sharon Katz, Nancy B. Ludmerer* and *D. Scott Tucker* on the brief; *Davis Polk & Wardwell, Robert Ernst* and *Richard H. Wagner,* attorneys), for appellants.

### OPINION OF THE COURT

WILLIAMS, J.

This appeal raises the issues of whether the motion court erred in not dismissing, on defendants' pre-answer motion to dismiss, plaintiffs' second amended complaint, which alleged causes of action for violations of General Business Law §§ 349 and 350, breach of warranty and breach of contract, and in granting plaintiffs' CPLR 3025 (b) motion to amend which interposed an additional cause of action for fraudulent inducement.

Plaintiffs in this pre-certification class action suit, brought pursuant to CPLR 901, are residents of New York, Maryland, and the District of Columbia, and a New Jersey corporate entity who are present or former subscribers to defendants' Digital Subscriber Line (DSL) service and seek for themselves, and those similarly situated, to hold defendants liable for allegedly misrepresenting the quality of their DSL service. Defendants Bell Atlantic Corporation and its subsidiary Bell Atlantic Internet Solutions are Delaware corporations, the former with its principal place of business in New York County, the latter in Virginia. Bell Atlantic is now known as Verizon Communications, Inc.

The representations at issue were allegedly made on defendants' Web site and stated, *inter alia*, as follows:

> "FAST—High speed Internet access service up to 126x faster than your 56K modem.
>
> DEDICATED—You're always connected—no dialing in and no busy signals, ever!
>
> CONVENIENT—Allows you to talk on the phone and use the Internet simultaneously—on the same line!
>
> SIMPLE—Works on your existing phone line and

our self-installation kit can be set up in minutes."

"The quality of the technical support staff is unbelievable; never have I experienced such prompt and responsive support for Internet service since 1993 as one of the first DC-area residential customers Digital Express. As for the service itself, it has offered the full 640Kbps of promised bandwidth" (purported customer testimonial).

Plaintiffs also submitted a New York Times article which reported on consumer dissatisfaction with defendants' DSL service.

The Terms and Conditions of defendants' Internet Access Service Agreement (the Service Agreement), which is included on the installation CD-ROM, include the following provisions to which the subscriber must agree in order to complete installation and commence service:

"3.1 This Agreement goes into effect when you have completed your registration for the Service. The Agreement shall continue in full force and effect on a month-to-month basis until terminated by either party as permitted by this Agreement. * * *

"11.7 You understand and agree that [defendant] does not warrant the Service to be uninterrupted or error-free. You further understand and agree that [defendant] has no control over third party networks or web sites that you may access in the course of your use of the Service, and that delays and disruptions of other network transmissions are completely beyond the control of [defendant]. [Defendant] cannot and will not guarantee that the Service will provide Internet access that meets your needs. * * *

"11.9 No warranty is given that the Service is error-free. [Defendant] makes no warranty regarding any transactions executed through the Service. * * *

"12.1 THE SERVICE IS PROVIDED ON AN 'AS IS' OR 'AS AVAILABLE' BASIS. DO NOT USE THE SERVICE IN ANY HIGH RISK ACTIVITIES WHERE DAMAGE OR INJURY TO PERSON, PROPERTY, ENVIRONMENT OR BUSINESS MAY RESULT IF AN ERROR OCCURS. YOU EXPRESSLY ASSUME ALL RISK FOR SUCH USE.

"12.2 EXCEPT AS OTHERWISE SPECIFICALLY SET FORTH IN THIS AGREEMENT, [DEFENDANT], ITS THIRD PARTY LICENSORS AND THIRD PARTY SERVICE PROVIDERS DISCLAIM ANY AND ALL WARRANTIES FOR THE SER-

VICE WHETHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANT[IES] OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. * * *

"14.9 This Agreement, including all Attachments hereto, which are fully incorporated into this Agreement, constitutes the entire agreement between you and [defendant] with respect to the subject matter hereto and supersedes any and all prior or contemporaneous agreements whether written or oral."

As part of the installation/registration process, the new subscriber is informed that he or she is allowed a 30-day trial period, from the date of registration, within which he or she may cancel the service, if he or she is dissatisfied, and receive a "full refund for all one-time and first month charges." Beyond that, the Service Agreement is on a month-to-month basis until terminated by either party as permitted by its terms, and may be terminated by a subscriber at any time "without cause."

In general, on a CPLR 3211 motion to dismiss, the pleading should be construed liberally, and the facts as alleged in the complaint are presumed to be true and are accorded the benefit of every possible favorable inference (CPLR 3026; *Rovello v Orofino Realty Co.*, 40 NY2d 633, 634). Where documentary evidence flatly contradicts the factual claims, the entitlement to the presumption of truth and the favorable inference is rebutted (*Ullmann v Norma Kamali, Inc.*, 207 AD2d 691, 692). The applicable standard for determining a CPLR 3211 (a) (7) motion is whether, within the four corners of the complaint, any cognizable cause of action has been stated (*Guggenheimer v Ginzburg*, 43 NY2d 268, 275; *Morone v Morone*, 50 NY2d 481). The test on a CPLR 3211 (a) (1) motion is whether the documentary evidence submitted "conclusively establishes a defense to the asserted claims as a matter of law" (*Leon v Martinez*, 84 NY2d 83, 88; *IMO Indus. v Anderson Kill & Olick*, 267 AD2d 10, 11).

General Business Law §§ 349 and 350 are consumer protection statutes that prohibit deceptive acts and practices and false advertising, respectively, "in the conduct of any business, trade or commerce or in the furnishing of any service in this state" and, *inter alia*, afford consumers a private right of action to redress such misconduct (Givens, Practice Commentaries, McKinney's Cons Laws of NY, Book 19, General Business Law § 349, at 565; *Gaidon v Guardian Life Ins. Co.*, 94 NY2d 330, 344). Such acts, practices or advertising must have an impact on consumers at large, and must be shown to be deceptive or

misleading in a material way and to have injured the plaintiff as a result (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 25-26; *St. Patrick's Home for Aged & Infirm v Laticrete Intl.*, 264 AD2d 652, 655). The test is whether the false or deceptive acts or practices are "likely to mislead a reasonable consumer acting reasonably under the circumstances" (*Oswego* at 26).

■ Here the General Business Law claims should have been dismissed. In the first place, as noted above, sections 349 and 350 expressly proscribe specified conduct that takes place "in this state"; thus, such claims by the non-New York residents should be dismissed, since they do not allege that they received defendants' DSL services within New York State (*see, Rich Prods. Corp. v Kemutec, Inc.*, 66 F Supp 2d 937, 982, *affd* 241 F3d 915). In general, plaintiffs' General Business Law claims do not allege the requisite false or deceptive conduct. Plaintiffs misconstrue the representations cited and/or ignore the role of the trial period in allowing them to assess the representations. For example, the statement as to high speed service clearly sets forth a maximum possible speed, not the standard speed at which the service would operate. The representation regarding the dedicated connection refers to the fact that it is a connection that need not be dialed up, not that the connection is infallible and would never be interrupted for any reason. These representations, plus the remaining ones about the self-installation kit and the quality of the technical support staff, must be evaluated in light of the 30-day trial period and right to cancel without obligation, not to mention the Service Agreement provisions that the service would be provided on an "as is" or "as available" basis, and the several specific and general disclaimers of warranties express and implied that address the very service glitches plaintiffs cite (*see, Against Gravity Apparel v Quarterdeck Corp.*, 267 AD2d 44).

The Court of Appeals decision in *Gaidon v Guardian Life Ins. Co.* (94 NY2d 330) does not bar this result. *Gaidon* involved a factually distinguishable situation wherein the representations made about "vanishing premium" life insurance policies, a consumer product proscribed in many states, were found to be tailored to the individual consumer plaintiffs' expectations such that the disclaimers at issue there did not accurately or completely address the risks involved with the product as represented. By way of contrast, standard, less complicated representations were made to all of the plaintiffs in the case at bar, and the disclaimers clearly and candidly addressed those problems.

■ As for the plaintiffs' causes of action sounding in breach of warranty and breach of contract, it would be highly unlikely, upon a reading of defendants' representations along with the Service Agreement, that a reasonably prudent consumer would rely on the representations in the face of the Service Agreement's conspicuous, unequivocal disclamations concerning any warranties as to, *inter alia,* disruptions or errors in service (*see, Against Gravity Apparel v Quarterdeck Corp.,* 267 AD2d 44). Plaintiffs' various contentions to the effect that it was possible to use defendants' service without having read the terms and conditions of service are insufficient to bar dismissal, since the complaint does not allege that any of the plaintiffs did so and, with regard to the location or conspicuousness of the terms and conditions within the installation package, it has been held that such does not impair the enforcement of the agreement (*see, Brower v Gateway 2000,* 246 AD2d 246, 252; *Hill v Gateway 2000,* 105 F3d 1147, 1148, *cert denied* 522 US 808; *ProCD, Inc. v Zeidenberg,* 86 F3d 1447, 1453).

■ Finally, it was error to grant leave to amend to add the claim for fraudulent inducement. A proposed amendment that cannot survive a motion to dismiss should not be permitted (*see, Glenn Partition v Trustees of Columbia Univ.,* 169 AD2d 488, 489). Plaintiffs failed to sufficiently allege that defendants, with scienter, misrepresented material fact in order to induce plaintiffs' reliance and that they reasonably relied on the representations to their detriment (*see, National Union Fire Ins. Co. v Worley,* 257 AD2d 228, 233). As noted, defendants' representations were not deceptive or misleading and, in light of the 30-day trial period and the clear and candid disclaimers, plaintiffs have not shown that they reasonably relied on the representations to their detriment.

Accordingly, the order of Supreme Court, New York County (Herman Cahn, J.), entered October 16, 2000, which, in a consolidated decision, denied defendants' motion, pursuant to CPLR 3211 (a) (1) and (7), to dismiss the complaint, and granted plaintiffs' motion, pursuant to CPLR 3025 (b), to amend their second amended complaint to interpose a claim for fraudulent inducement, should be reversed, on the law, with costs, plaintiffs' motion denied, and defendants' motion granted. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

NARDELLI, J. P., TOM, LERNER and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered October 16, 2000, reversed, on the law, with costs, plaintiffs' motion

pursuant to CPLR 3025 (b) to amend their second amended complaint to interpose a claim for fraudulent inducement denied, and defendants' motion pursuant to CPLR 3211 (a) (1) and (7) to dismiss the complaint granted.