**Ruth WIENER, Plaintiff,**

v.

**UNUMPROVIDENT CORPORATION, the Paul Revere Life Insurance Company, and New England Life Insurance Company, Defendants.**

**No. 00 CIV. 9315(NRB).**

United States District Court, S.D. New York.

Feb. 28, 2002.

Charles D. Krieg, Paykin, Krieg & Schrader, L.L.P., New York City, for Ruth Weiner, plaintiff.

Peter J. Heck, Del Mauro, DiGiaimo & Knepper, New York City, for Unumprovident Corporation, The Paul Revere Life Insurance Company, defendants.

Peter J. Heck, Del Mauro, DiGiaimo & Knepper, Morristown, NY, for Unumprovident Corporation, The Paul Revere Life Insurance Company, New England Life Insurance Company, defendants.

## OPINION AND ORDER

BUCHWALD, District Judge.

Plaintiff, Ruth Wiener ("Wiener"), commenced this lawsuit in New York Supreme Court in November of 2000, alleging claims for breach of contract, violation of General Business Law ("GBL") § 349, intentional infliction of emotional distress, and bad faith. Defendants Unumprovident Corporation ("Unum"), Paul Revere Life Insurance Company ("Paul Revere"), and New England Life Insurance Company ("New England") removed pursuant to 28 U.S.C. § 1441 on diversity grounds. Presently before the Court is defendants' motion to dismiss for failure to state a claim as a matter of law, pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants also argue that plaintiff's claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1144(a). Plaintiff moves for leave to amend to rectify any deficiencies in the complaint should the Court find merit in defendants' motion. For the following reasons, defendants' motion to dismiss is granted in part and denied in part. Plaintiff's motion for leave to amend the complaint is granted.

## BACKGROUND

In January of 1992, plaintiff became extremely ill and was unable to continue working as an accountant. From that time until August of 2000, plaintiff received monthly disability benefit payments from defendants Paul Revere and New England [1], from which she had purchased individual disability insurance policies in 1988 and 1981 respectively. Wiener also received disability benefits under a group policy with Paul Revere. On August 21, 2000, Unum notified Wiener in writing that it no longer considered her to be totally disabled as defined in the group policy. Thereafter, defendants ceased making payments under both the individual and group policies. Plaintiff alleges that this decision was made by a customer care representative who is not a medical doctor based solely upon an incomplete review of her medical records.

In her complaint, plaintiff seeks declaratory judgment that she is totally disabled under the definition in the individual insurance policies, requiring defendants to continue to make such payments for as long as Wiener is so disabled, and awarding Wiener judgment in an amount equal to

---

1. Unum is the parent company of Paul Revere, and was responsible for administering the New England policy under a 1997 agreement between Unum and New England.

the sum of the income disability payments under the individual policies for the period since termination. Wiener also seeks damages for breach of contract, violation of General Business Law § 349, intentional infliction of emotional distress, and bad faith denial of coverage. Subsequent to the filing of the complaint and in connection with an administrative proceeding governing the group policy, Unum reinstated Wiener's disability benefits and paid her all past-due benefits. Currently pending before this Court is defendants' motion to dismiss plaintiff's remaining claims under Rule 12(b)(6).

## A. Legal Standard

In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), we accept as true all material factual allegations in the complaint, *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l, Ltd.*, 968 F.2d 196, 198 (2d Cir.1992), and may grant the motion only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Still v. DeBuono*, 101 F.3d 888, 891 (2d Cir.1996); *see Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In addition to the facts set forth in the complaint, we may also consider documents attached thereto and incorporated by reference therein, *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*, 155 F.3d 59, 67 (2d Cir.1998), as well as matters of public record, *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir.1998).

## B. Applicability of ERISA

In their motion, defendants argue that plaintiff's claims concerning termination of her insurance benefits under the two individual policies named in her complaint are preempted by ERISA. Defendants ground this assertion on the fact of plaintiff's coverage by a third policy with Paul Revere that is a group insurance policy provided by plaintiff's employer and governed by ERISA. Defendants conclude that ERISA preempts determination of the claims asserted in this lawsuit because the individual policies at·issue here are related to the group policy.[2]

■ By its terms, ERISA governs employee benefit plans established or maintained by an employer or an employee organization. *See* 29 U.S.C. § 1002(1)-(6); *see Rombach v. Nestle USA, Inc.*, 211 F.3d 190, 192–93 (2d Cir.2000) (reviewing the kinds of employee plans covered by ERISA). Defendants seem to concede that the individual policies themselves do not fall within this description, but argue that the individual policies are so related to the third plan that they are preempted. *See* Defs.' Mot. to Dismiss at 19. However, without the benefit of any discovery, we are without the requisite knowledge to evaluate the inter-relationship, if any, between the individual policies purchased by plaintiff and the group policy. *Cf. Agrawal v. Paul Revere Life Ins. Co.*, 205 F.3d 297, 299–302 (6th Cir.2000) (discussing the fact-based analysis of whether individual and group policies should be categorized together as an ERISA plan); *Waks v. Empire Blue Cross/Blue Shield*, 263 F.3d 872, 874–76 (9th Cir.2001) (discussing test for whether plan is subject to ERISA regulation and holding that an individual policy that has been converted from a group policy under an ERISA plan is no longer regulated by ERISA). For this reason, defendants' motion to dismiss plaintiff's claims as preempted by ERISA is denied without prejudice to its renewal if upon the

---

**2.** We note that in their submissions defendants fail to cite any specific allegations in the complaint or case law to support this legal conclusion.

development of the record there is a factual and legal basis for such renewal.

### C. General Business Law § 349

Section 349 of New York's General Business Law makes unlawful deceptive acts or practices in conducting a business or furnishing a service. A person who has been injured by violation of this section may recover actual damages or $50, whichever is greater. If a Court finds that the defendant acted willfully or knowingly in violating § 349, damages may be tripled to a maximum of $1,000 and attorney's fees may be awarded.

■ In order to state a claim under § 349, a plaintiff must charge that a defendant has engaged in deceptive conduct that is consumer oriented causing injury to the plaintiff. *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995). Defendants argue that the conduct alleged by plaintiff is not consumer oriented. To be consumer oriented conduct, "[t]he conduct need not be repetitive or recurring but defendant's acts or practices must have a broad impact on consumers at large." *Id.; Oswego Laborers' Local 214 Pension v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d '741 (1995) ("Plaintiff. . .need not show that the defendant committed the complained-of acts repeatedly. . .but instead must demonstrate that the acts or practices have a broader impact on consumers at large."). The sale of a standard form insurance policy has been held to constitute such consumer oriented conduct under this statute. *Riordan v. Nationwide Mutual Fire Ins. Co.*, 977 F.2d 47, 51–53 (2d Cir.1992) (holding § 349 applicable to the sale of a homeowner's insurance policy); *New York Univ.*, 87 N.Y.2d at 321, 639 N.Y.S.2d 283, 662 N.E.2d 763 (citing *Riordan* with approval, but distinguishing where the insurance

policy at issue was not a "modest" type of transaction, but rather an individualized, complex contract for insurance coverage). Therefore, we disagree with defendants' contention that plaintiff's allegations fail to state a claim under GBL § 349 because they are not consumer oriented.

■ However, we find that plaintiff has failed to state a claim under § 349 for other reasons. First, plaintiff has not alleged that the practices being challenged as deceptive occurred within the State of New York, summarily asserting only that "[e]ach individual act, solicitation, contact or deposit is a separate instance of a deceptive and/or fraudulent trade practice." GBL § 349 prohibits deceptive practices "in the conduct of any business, trade or commerce or in the furnishing of a service in the state." *See Goshen v. Mutual Life Ins. Co. of N.Y.*, 286 A.D.2d 229, 229–30, 730 N.Y.S.2d 46, 47 (1st Dept.2001) (dismissing claim where plaintiff was a Florida resident who purchased a "vanishing premium" insurance policy in Florida). While it appears that plaintiff's application for the insurance policies was submitted in New York, she is a New Jersey resident and received her benefits in New Jersey during the eight year period prior to this lawsuit. *See* Cert. of Peter J. Heck, Ex. B, C, and D. Moreover, plaintiff's theory of deceptive conduct appears to be that the decision to transfer the administration of the disability policies from Paul Revere's Worchester, Massachusetts Office to Unum's Chattanooga, Tennessee office shortly before terminating plaintiff's benefits "was part of a sinister cost cutting plan designed to indiscriminately eliminate open claims." *See* Opp'n to Mot. to Dismiss at 4. For these reasons plaintiff does not appear to have a viable argument that the allegedly deceptive practices of defendants occurred within the state.

Second, plaintiff has failed to allege that defendant is engaging in "an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Oswego Laborers'*, 85 N.Y.2d at 25, 623 N.Y.S.2d 529, 647 N.E.2d 741; *Scott v. Bell Atlantic Corp.*, 282 A.D.2d 180, 184, 726 N.Y.S.2d 60, 63 (1st Dept.2001) ("The test is whether the false or deceptive acts or practices are 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'") (citing *Oswego* ). In this case, given that defendants paid plaintiff the disability insurance benefits for over eight years before terminating these benefits, it cannot be said that defendants "sold disability insurance [they] never intended to provide." *Shapiro v. Berkshire Life Insurance Co.*, 212 F.3d 121, 127 (2d Cir.2000) (internal citations omitted); *cf. DiDonato v. INA Life Ins. Co. of N.Y.*, No. 99 Civ 470(JSM), 1999 WL 436444 (S.D.N.Y. June 24, 1999) (denying motion to dismiss § 349 claim where insured alleged that defendant sold insurance it never intended to provide). Even if defendants' review of plaintiff's file was inadequate and their termination of benefits mistaken, such allegations do not constitute deceptive conduct under § 349. *Shapiro*, 212 F.3d at 127 (finding insufficient allegations of deceptive conduct where plaintiff claimed that the defendant insurance company failed to perform a sufficient investigation of a disability claim before denying it, and stating, "an insurer's denial of a claim is not deceptive simply because it is mistaken"); *see also DePasquale v. Allstate Ins. Co.*, 179 F.Supp.2d 51, 61–62 (S.D.N.Y.2002) (noting that almost uniformly, courts considering whether disputes between policy holders and insurance companies concerning the scope of coverage do not fall within § 349); *Northwestern Mutual Life Ins. Co. v. Wender*, 940 F.Supp. 62, 65 (S.D.N.Y. 1996) (dismissing for failure to allege deceptive practices an insured's § 349 claim of improper cessation of benefit payments and stating, "this is essentially a private contract dispute relating to the specific facts at hand"); *Fekete v. GA Ins. Co. of N.Y.*, 279 A.D.2d 300, 719 N.Y.S.2d 52, 53 (1st Dept.2001) ("Private contract disputes regarding policy coverage and the processing of a claim that is unique to the parties does [sic] not fall within the ambit of General Business Law § 349."); *Korn v. First UNUM Life Ins. Co.*, 277 A.D.2d 355, 356, 717 N.Y.S.2d 606, 606–07 (2d Dept.2000) (same). For these reasons, plaintiff's claim under GBL § 349 is dismissed.

## D. Remaining Common Law Claims

Defendants also move to dismiss plaintiff's common law claims of breach of contract, intentional infliction of emotional distress, and bad faith. We note as a preliminary matter that plaintiff, in her brief, incidentally raised the question of whether New York or New Jersey law applies to this action. *See* Opp'n to Mot. to Dismiss at 13.[3] The parties have not briefed this question on its merits. Since we conclude that defendants' motion to dismiss plaintiff's claims for intentional infliction of emotional distress and bad faith fail to state a claim as a matter of law under both New York and New Jersey law, defendants' motion to dismiss with respect to these claims is granted. Irrespective of which state's law is applied, we further find that plaintiff's claim for breach of contract is not moot, and deny defendant's

---

3. It appears from the parties' submissions that plaintiff resides in New Jersey, and applied for the disability policies with an insurance agent in New York. Without more information, we are without a basis to determine which state's law governs.

motion to dismiss with respect to this claim.

### 1. *Intentional Infliction of Emotional Distress*

■ As the basis for her intentional infliction of emotional distress claim, plaintiff's complaint alleges that defendants' termination of her disability benefits was a malicious and reckless course of conduct that caused Weiner to suffer great mental anguish and other physical and emotional symptoms. In defining the elements of intentional infliction of emotional distress, both New York and New Jersey follow the Restatement (2d) of Torts, § 46[1] (1965). *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993) (explaining that New York courts adopted the Restatement formulation); *Yourman v. People's Security Life Ins. Co.*, 992 F.Supp. 696, 705 (D.N.J.1998) (noting that New Jersey courts follow the Restatement formulation). The elements of intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendants; (2) an intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress. *Id.* The alleged conduct must be truly egregious to meet these required elements, and "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. American Home Prod. Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (N.Y.1983) (citing the Restatement). Further, "the emotional distress suffered by the plaintiff must be so severe that no reasonable man could be expected to endure it." Restatement, *supra*, § 46 comment j.

■ The conduct alleged in plaintiff's complaint, even regarded in the light most favorable to plaintiff and without challenging the sincerity of plaintiff's distress, does not meet this standard. For example, in *MaGee v. Paul Revere Life Ins. Co.*, 954 F.Supp. 582 (E.D.N.Y.1997), the plaintiff alleged that the defendant insurance company wrongly terminated plaintiff's ongoing disability benefits after contacting the plaintiff's treating physicians in an attempt to influence their opinions about plaintiff's need for continuing disability benefits. Applying New York law, the court determined that the plaintiff's allegations were not sufficiently outrageous to state a claim for intentional infliction of emotional distress. *Id.* at 587. In another case, the Appellate Division of the New York Supreme Court dismissed a claim of intentional infliction of emotional distress where the plaintiff alleged that the defendant insurance company had failed to timely compensate her for the destruction of her home by fire, thereby leaving plaintiff without a home and adequate possessions or funds for over a year, and accused plaintiff of arson and of making false statements under oath. *Cunningham v. Security Mutual Ins. Co.*, 260 A.D.2d 983, 984, 689 N.Y.S.2d 290, 291 (3rd Dept.1999). Similarly, applying New Jersey law, the court in *Yourman v. People's Security Life Insurance*, 992 F.Supp. at 704–05, concluded that the plaintiff failed to state a claim for intentional infliction of emotional distress where she alleged that the defendant insurance company initially wrongly refused to issue coverage, later granted coverage at a lower deductible, and then threatened the plaintiff with a lawsuit.

As in these cases, the conduct here alleged by Wiener, while troubling, does not rise to the level required by law to meet the threshold of extreme and outrageous

conduct. *See Howell,* 81 N.Y.2d at 122, 596 N.Y.S.2d 350, 612 N.E.2d 699 (noting that every claim of intentional infliction of emotional distress ever heard by the Court of Appeals has failed because the conduct has not been sufficiently outrageous). Further, courts considering similar facts have characterized such claims for intentional infliction of emotion distress as true contract cases recast in tort. *MaGee,* 954 F.Supp. at 587 (noting that, "this case, at its core, is one for breach of contract based on a failure to pay insurance benefits"); *Harris v. Allstate Ins. Co.,* 83 F.Supp.2d 423 (S.D.N.Y.2000) (citing *MaGee* for this proposition and dismissing a claim for intentional infliction of emotional distress where plaintiff alleged defendant had discriminated based on race in the denial of automobile insurance coverage); *Cunningham,* 260 A.D.2d at 984, 689 N.Y.S.2d at 291 (finding that the breach of the contract of insurance does not create a cause of action in tort apart from the contractual relationship between the insured and the insurer). For these reasons, plaintiff's claim for intentional infliction of emotional distress is dismissed.

### 2. Bad Faith Denial of Coverage

Plaintiff's claim for bad faith denial of coverage is crafted as an independent cause of action in her complaint. Plaintiff alleges that defendants denied her disability benefits without a reasonable basis and in reckless disregard of their obligations under her insurance policy.[4] Plaintiff asserts damages in excess of $3,000,000, stating that "[d]efendants' failure to make benefit payments is in bad faith and will engender additional expenses and losses to Wiener."[5] *See* Compl. ¶ 39. Because Wiener has failed to state a claim as a matter of law under both New York and New Jersey law, defendant's motion to dismiss her bad faith cause of action is granted.

Under New York law, an independent tort action for bad faith denial of insurance coverage is not recognized. *See New York Univ.,* 87 N.Y.2d at 315–20, 639 N.Y.S.2d 283, 662 N.E.2d 763 (discussing the unavailability of a tort remedy in the absence of a duty apart from contractual obligations and dismissing bad faith-type claim in the absence of an underlying tort duty). Further, punitive damages are unavailable in breach of contract cases absent extraordinary circumstances. As stated by the New York Court of Appeals regarding a similar bad faith claim for punitive damages,

A complaint does not state a claim for compensatory or punitive damages by alleging merely that the insurer engaged in a pattern of bad-faith conduct. The complaint must first state a claim of egregious tortious conduct directed at the insured claimant. Only then does an alleged pattern of bad-faith conduct attain legal significance insofar as it demonstrates that a public wrong would be vindicated by the award of punitive damages.

4. Plaintiff's also make the unpersuasive argument that defendants' inclusion of a notice of legal rights under ERISA in the letter disclaiming coverage was a willful and malicious attempt to mislead plaintiff of her legal rights under the individual policies. First of all, this assertion is absent from the complaint. Second, the letter, which is attached as Exhibit D to plaintiff's Certification of Peter J. Heck, references plaintiff's *group* policy only and does not appear to attempt to advise her of her legal rights under the individual policies.

5. This statement of damages is inconsistent with the summary of damages demanded at the conclusion of the complaint, where plaintiff asserts compensatory damages of $1,000,000 as well as punitive damages of $3,000,000 for this bad faith cause of action. *See* Compl. ¶ E.

*Rocanova v. Equitable Life Assurance Soc'y,* 83 N.Y.2d 603, 613–16, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994); *New York Univ.,* 87 N.Y.2d at 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 ("Where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court considering defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract."). As New York does not recognize bad faith denial of coverage as an independent tort, and because plaintiff has failed to state an underlying tort cause of action upon which punitive damages could be grounded, plaintiff fails to state a claim under New York law.[6]

 For different reasons, plaintiff's complaint fails to state a claim for bad faith under New Jersey law as well. Unlike New York, the Supreme Court of New Jersey has recognized a cause of action for bad faith denial of insurance coverage where the denial is for reasons that are "not even debatably valid and the economic losses sustained by the policyholder are clearly within the contemplation of the insurance company." *Pickett v. Lloyd's,* 131 N.J. 457, 461, 621 A.2d 445 (1993); *see also Robeson Indust. Corp. v. Hartford Accident & Indemnity Co.,* 178 F.3d 160, 168–69 (discussing bad faith claim and dismissing it for failure to state a claim under both New York and New Jersey law). However, because such an action "sound[s] more in contract than in tort...the familiar principles of contract law will suffice to measure damages." *Id.* at 474, 621 A.2d 445. Employing this reasoning, the court held that reasonably foreseeable *consequential* damages may be awarded for bad faith denial, but did not change the state of the law with respect to the general unavailability of punitive damage awards in such insurance coverage cases. *Id.* at 476, 621 A.2d 445 (citing with approval several prior cases that have held that absent egregious circumstances, there exists no right to recover punitive damages); *Ellmex Construction Co., Inc. v. Republic Ins. Co.,* 202 N.J.Super. 195, 205–208, 494 A.2d 339, 344–46 (1985) (cited with approval in *Pickett* and holding insurer seeking to recover under builder's risk policy was not entitled to punitive damages).

 While plaintiff demands both compensatory and punitive damages on her bad faith claim, plaintiff's complaint fails to demonstrate through "a short and plain statement of the claim" that she "is entitled to relief" under the bad faith theory as developed in *Pickett.* Fed.R.Civ.P. 8(a).

---

**6.** We note that in a recent decision by the Appellate Division in *Acquista v. New York Life Ins. Co.,* 285 A.D.2d 73,78, 730 N.Y.S.2d 272 (1st Dept.2001), the court considered the scope of contract damages for an insurer's bad faith refusal to pay first-party benefits. In that case, the court concluded that "while plaintiff's cause of action alleging bad faith conduct on the part of the insurer cannot stand as a distinct tort cause of action, we conclude that its allegations may be employed to interpose a claim for consequential damages beyond the limits of the policy for the claimed breach of contract." 285 A.D.2d at 82, 730 N.Y.S.2d at 278–79. At least one court has interpreted this case as inconsistent with Court of Appeals precedent. *Brown v. Paul Revere Life Ins. Co.,* No. 00 CV 9110, 2001 WL 1230528 (S.D.N.Y. Oct. 16, 2001) (concluding that *Acquista* is inconsistent with *Rocanova* and *New York University* and therefore declining to apply *Acquista* in a diversity case). Ultimately, because plaintiff does not plead facts supporting a demand for consequential damages, we need not reach the question of the availability of consequential damages for bad faith denial of coverage under New York law. *See Sweazey v. Merchants Mutual Ins. Co.,* 169 A.D.2d 43, 45, 571 N.Y.S.2d 131, 132–33 (3rd Dept.1991) (noting that in the context of insurance coverage, certain consequential damages may be awarded for breach of contract where such damages were foreseeable and within the contemplation of the parties at the time the contract was made).

In fact, the only relevant injury described with any clarity in the complaint is the loss of the benefits under the policy. Further, as discussed earlier, we find no circumstances distinguishing this case from standard contract analysis that would justify the most exceptional award of punitive damages for breach of contract. Therefore, we find that plaintiff has failed to state a claim under the bad faith theory.

### 3. *Breach of Contract*

■ Defendants argue that because the plaintiff's benefits were reinstated and all past due benefits paid, plaintiff's breach of contract claim is moot. Plaintiff argues that her breach of contract claim is not moot because she seeks consequential damages and because defendants never paid interest on the withheld payments. Because standard recovery in such insurance coverage cases includes past due benefits plus interest, *see Caiati of Westchester v. Glens Falls Ins. Co.*, 265 A.D.2d 286, 696 N.Y.S.2d 474 (2nd Dept.1999), plaintiff's cause of action for breach of contract is not entirely moot and is sustained.

### E. Leave to Amend

Plaintiff has requested leave to amend her complaint in the event that defendants' defendants' motion to dismiss is granted. While the District Court has wide discretion on whether to grant leave to amend, we are required to grant leave "freely . . . when justice so requires." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993). The Court may nonetheless deny leave to amend when it appears that granting leave to amend would be futile, or "unlikely to be productive." *Id.* I n this case, with respect to plaintiff's claims under GBL § 349, for intentional infliction of emotional distress, and for punitive damages under the bad faith theory, we deny plaintiff's motion for leave to amend because amendment would be futile under the law of both New York and New Jersey.

Our resolution of plaintiff's motion for leave to amend is otherwise with respect to plaintiff's possible claim for consequential damages. While it is unclear from the face of plaintiff's complaint whether she in fact demands consequential damages,[7] it is appropriate to allow plaintiff an opportunity to clarify her demand for consequential damages by submitting proposed amendments. Because the viability of any amendment to the complaint with respect to consequential damages will require a determination of applicable law, the submission, if any, is to first set forth legal argument on whether the Court should apply New York or New Jersey law to this action. Further, if plaintiff is in fact seeking consequential damages, she is directed to submit two proposed amendments. The first should be a proposed amendment to her contract cause of action assuming the applicability of New York law. This amendment should be accompanied by legal argument supporting plaintiff's position that consequential damages are available for the breach of a disability insurance contract under New York law. Second,

---

7. In the complaint, plaintiff's actual damages are alleged to exceed $1,000,000, which is far more than the insurance companies owed Wiener in past payments and interest under the disability policies. However, plaintiff states no facts establishing the incurrence of consequential damages resulting from the breach. Further, with respect to her bad faith claim under New York law, plaintiff argued that *"the only issue* for the Court to determine is whether [defendants'] self-serving fraudulent acts justify *punitive* damages under New York law." *See* Opp'n to Mot. to Dismiss at 10 (emphasis added). Accordingly, it is not at all clear whether plaintiff means to assert a claim for consequential damages at all.

assuming the applicability of New Jersey law, plaintiff is to propose amendments and relevant legal argument to support her claim for consequential damages under the bad faith cause of action.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted with respect to plaintiff's claims under GBL § 349, for intentional infliction of emotional distress, and for bad faith. Defendants' motion is denied with respect to defendants' ERISA preemption argument and plaintiff's breach of contract claim. Plaintiff is granted leave to amend only as directed in Part E. If plaintiff chooses to so amend, she must submit any proposed amendment in the form therein described no later than March 15, 2002. Defendants should respond by March 29, 2002, and plaintiff may submit a brief reply by April 1, 2002.

**IT IS SO ORDERED.**