OPINION OF THE COURT
Karla Moskowitz, J.
This is a breach of contract action in which the defendant Blue Cross and Blue Shield of Greater New York (Blue Cross) moves for partial summary judgment dismissing the plaintiff’s second and third causes of action* on the grounds that they have no merit as a matter of law.
Plaintiff Suzanne White, a self-employed writer, took out a combined hospital service, surgical-medical contract, known as the Four Star Executive Indemnity Contract (the contract), with the defendant which became effective on December 28, 1976. The contract provided medical coverage for Ms. White and her two children, aged 9 and 11. Pursuant to the contract application, the plaintiff was required to fill out a medical questionnaire and submit a report prepared by her physician of a physical exam which indicated that she was free of certain diseases specified on the application.
In April 1978, Ms. White was hospitalized for a surgical procedure and also had a mammogram. The mammogram was negative and Ms. White’s medical record also stated that breast exams performed one month earlier were negative. Ms. White contends that Blue Cross received a copy of this mammogram report plus her medical records because of its underwriting procedures. Blue Cross does not deny it received those test results.
In July 1978, Ms. White was admitted to New York Hospital for a biopsy of a growth she discovered on her right breast. Ms. White subsequently underwent a radical mastectomy and remained hospitalized for a period of time after the biopsy *127 indicated a positive test for cancer. Ms. White also had to endure an extended period of chemotherapy. After her discharge from the hospital, Ms. White submitted the appropriate claim forms to Blue Cross for payment of her hospital and medical bills.
In September 1978, Ms. White received a letter from Blue Cross notifying her that her medical bills would not be paid because of the cancellation of her contract. Ms. White, after making inquiries, was informed that the contract was canceled because of medical information received from New York Hospital which was contradictory to information contained in the questionnaire Ms. White filled out when she applied for the contract. Specifically, the New York Hospital report stated that Ms. White had been under a private physician’s care for a right breast mass for a period of five years. Ms. White’s questionnaire did not contain this information.
Ms. White claimed that the information was erroneous. She subsequently received a letter from a Dr. Joseph Mandel, a physician in the part-time employ of Blue Cross. Dr. Mandel stated that, upon investigation of Ms. White’s claim, Blue Cross had received information contrary to her application. Ms. White then wrote back to Dr. Mandel and provided him with the name, address, and telephone number of her attending physician. Dr. Mandel admitted, in a subsequent examination before trial, that it was not his signature on the letter and he did not recall the investigation or disposition of Ms. White’s case.
Ms. White’s letter was then referred to a Mr. Prudente in the underwriting department of Blue Cross. By letter dated October 10, 1978, Mr. Prudente informed Ms. White that, upon investigation which indicated Ms. White had been under treatment for a right breast mass for five years, Blue Cross had no choice but to cancel her contract. Ms. White contends that no investigation took place.
By letter dated October 16, 1978, Ms. White wrote back to Blue Cross and explained that the medical entry was impossible because she had only been in this country for five years. Ms. White also reiterated her position that she first discovered a lump in her right breast in July 1978. She then forwarded a copy of this letter, as well as previous correspondence between herself and Blue Cross, to the New York State Department of Insurance.
Ms. White then received a letter from a Mr. Gambardella, *128 the manager of membership processing at Blue Cross, which stated in part that: "We trust you understand * * * that the hospital records constitute the legal documents upon which our dispositions are based. Therefore, although Mrs. White suggests her hospital records contain an inaccuracy, no change can be made.” Blue Cross appears to state that no matter what Ms. White contends, they intend to rely only on the hospital report. It is important to note that at this time, Blue Cross’s file on Ms. White contained the physician’s report submitted with her original application which gave Ms. White a clear bill of health; a subsequent report, by a different physician three months before Ms. White discovered the lump in her breast, which indicated that a mammogram was negative and that Ms. White was free of breast disease; and Ms. White’s own statements that she had no history of breast problems.
By letter dated July 3, 1979, Blue Cross acknowledged its mistake and reinstated Ms. White’s coverage retroactively. Blue Cross also indicated it would pay Ms. White’s medical bills as soon as she paid her premiums of $901.20. Ms. White then sent a letter to Blue Cross, dated October 16, 1979, explaining that because she had to pay her own medical bills, she would like to make partial payments. Blue Cross responded by informing Ms. White that they do not accept partial payments and demanded payment in full within 25 days. Blue Cross also warned Ms. White that her next quarterly payment was forthcoming. In light of the facts already enumerated, this action by Blue Cross, at the very least, appears unreasonable.
Ms. White contends , that, because she had to pay all of her medical, hospital and chemotherapy bills, she had no choice but to sell her car, home, and all of her personal belongings. She then claims that she was forced to move into a house with a friend in Buffalo and continue her treatment there. Ms. White maintains that she was finally forced, due to economic pressures, to move to France in order to take advantage of France’s socialized medical program in order to maintain her ongoing medical treatment.
Plaintiff commenced this action by service of a summons and complaint on or about September 14, 1984. The plaintiff asserts two causes of action which seek damages for breach of contract, breach of implied covenant of good faith and fair dealing and ongoing harm to her professional career and *129 credit reputation. The plaintiff also seeks $100,000 in punitive damages as well as attorneys’ fees.
The defendant now admits its liability for breach of contract but contends that most of the special damages sought by the plaintiff, as well as the punitive damages and attorneys’ fees, are not collectible. Defendant seeks to have these damages dismissed from the complaint.
The defendant first contends that damages which are consequential, unforeseeable and not in contemplation of the parties are not recoverable. The defendant further contends that, since it was unaware of the plaintiff’s economic, social and professional status, the damage to plaintiff resulting from a breach is unforeseeable. Plaintiff alleges that the defendant was aware of her economic, social and professional status because the application for Ms. White’s contract, which was for an individual as opposed to group policy, requires this information. Ms. White maintains that these damages were a natural consequence of the defendant’s breach.
In Kenford Co. v County of Erie (73 NY2d 312, 319), the Court of Appeals held that: "It is well established that in actions for breach of contract, the nonbreaching party may recover general damages which are the natural and probable consequence of the breach. '[I]n order to impose on the defaulting party a further liability than for damages [which] naturally and directly [flow from the breach], i.e., in the ordinary course of things, arising from a breach of contract, such unusual or extraordinary damages must have been brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting’ * * *. In determining the reasonable contemplation of the parties, the nature, purpose and particular circumstances of the contract known by the parties should be considered * * * as well as 'what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made’ ”. (See generally, 36 NY Jur 2d, Damages, §§ 39, 40.)
In addition, the Court of Appeals has also voiced disapproval of general compensatory damages with respect to hospital benefits and life insurance policies (Halpin v Prudential Ins. Co., 48 NY2d 906; see also, Topiwala v New York Life Ins. Co., 95 AD2d 746, appeal dismissed 60 NY2d 859). As a result, this court concludes that the plaintiff’s request for damages *130 with respect to the sale of her home, relocation costs and damage to her personal and professional reputation were not foreseeable and not in the contemplation of the parties at the time of the contract.
As to plaintiff’s request for damages for emotional distress, it has been held that such damages do not arise in an action for breach of contract (Fleming v Allstate Ins. Co., 106 AD2d 426, affd 66 NY2d 838, cert denied 475 US 1096; Wehringer v Standard Sec. Life Ins. Co., 57 NY2d 757). As a result, plaintiff’s request for damages for emotional distress must also be stricken from the complaint. The plaintiff’s claim for damages for loss of reputation is likewise not actionable (Dember Constr. Corp. v Staten Is. Mall, 56 AD2d 768).
Plaintiff also seeks compensation from the defendant for her attorneys’ fees. Attorneys’ fees are not generally available in a breach of contract action unless it is so specified in the contract or provided for by statute (Hirschfeld v IC Sec., 132 AD2d 332, lv dismissed 72 NY2d 841; Hooper Assocs. v AGS Computers, NYLJ, Nov. 27, 1989, at 21, col 1). However, attorneys’ fees may be recovered when the claim is part of a viable claim for punitive damages (Jacobson v New York Prop. Ins. Underwriting Assn., 120 AD2d 433; Royal Globe Ins. Co. v Chock Full O’Nuts Corp., 86 AD2d 315).
This court now turns to the issue of punitive damages. Defendant seeks to dismiss that part of the plaintiff’s complaint which seeks punitive damages and contends that its conduct does not rise to the standard set by the courts of this State to impose such damages on an insurer. The Appellate Division, First Department, has held that: "It is well established in this State that a claim for punitive damages against an insurance company requires a showing of morally reprehensible conduct directed at the general public, i.e., a public wrong as opposed to a mere private wrong.” (Samovar of Russia Jewelry Antique Corp. v Generali, Gen. Ins. Co., 102 AD2d 279, 281.)
The court went on to hold that: "We have consistently adhered to the standard of Walker v Sheldon * * * in rejecting claims for punitive damages unless there is a showing of wanton dishonesty as to imply a criminal indifference to civil obligations — morally culpable conduct directed at the general public, a public as opposed to a mere private wrong. The principle has been adopted by the Court of Appeals (Halpin v *131 Prudential Ins. Co., 48 NY2d 906, supra) and has been consistently followed in this Department” (supra, at 282; see also, Royal Globe Ins. Co. v Chock Full O’Nuts Corp., supra; Jacobson v New York Prop. Ins. Underwriting Assn., supra; Cook v Hartford Fire Ins. Co., 97 AD2d 731; Cohen v New York Prop. Ins. Underwriting Assn., 65 AD2d 71).
This court holds that on the facts of the present case, the plaintiffs claim for punitive damages can be sustained. The defendant’s conduct in this case is not only morally reprehensible, but shows an indifference to the human condition. Blue Cross is eminently aware of the incredible cost of a prolonged hospital stay, surgery, and follow-up procedures such as chemotherapy. Blue Cross was also aware, by way of the plaintiffs insurance application, that the plaintiff is a self-employed single mother of two children. Yet despite the plaintiffs continued pleas for reconsideration, the defendant continued to rely on a hospital report completed by a medical student despite extensive evidence to the contrary. As a result, the plaintiff lost her home, her car and was eventually forced to leave the country.
It is also this court’s view that the defendant’s conduct in reviewing claims indicates not only a wrong to the plaintiff in particular, but to the public in general. The plaintiff annexes deposition testimony, undisputedly by the defendant, from a Dr. Marvin Blitz, the present medical director of Blue Cross, Dr. Mandel and Mr. Prudente. The testimony leads this court to believe that Blue Cross made a decision on the plaintiffs case on the basis of an incomplete file, yet there appear to be no procedures of Blue Cross which were actually breached. In addition, the deposition testimony of different departmental employees appears to indicate different standards of review. A frightening revelation made by the defendant is that its review procedures are less than perfect. With the skyrocketing costs of present day health care, those imperfect procedures could foster a great harm upon the public in general. As a result, this court concludes that the plaintiffs claim for punitive damages, including attorneys’ fees, should be sustained.
Accordingly, the defendant’s motion for partial summary judgment is granted only to the extent that the plaintiffs claims for compensatory and consequential damages are stricken.

 The court notes that the plaintiff asserts only two causes of action in her complaint.