OPINION OF THE COURT
Sandra J. Feuerstein, J.
The plaintiff, Grand Metro Transit Mix Corporation (Grand Metro), commenced this action for damages it claims resulted from the defendant insurance company’s failure to timely process and pay a fire damage claim. Defendant has counterclaimed, seeking return of monies paid on the claim, based on plaintiff’s alleged fraudulent misrepresentation in submitting his son’s tax return as proof of his own income.
The facts are relatively simple. On October 24, 1984, plaintiff, a provider of ready-mixed concrete, had purchased a renewable one-year contract of insurance from the defendant which covered property and business interruption loss due to fire. A separate policy was issued for business auto loss and liability. The plaintiff suffered a fire at the business premises on Metropolitan Avenue in Brooklyn, New York, on October 18, 1985, six days prior to the cancellation of the policies.
As a result of that fire, plaintiff could not, according to its owner and president, Richard Stanford, conduct its business and, as a result of the defendant’s alleged delay in paying on the claim, the business became defunct. Although the defendant did pay to plaintiff the sum of $566,956.34 in 1991, representing business interruption and property losses plus interest from 1986, plaintiff contends that defendant breached the insurance contract by failing to timely pay the claim and that it is therefore also entitled to the sum of $3,000,000, representing the consequential loss of the business occasioned by defendant’s tardiness in resolving the claims.
Although the amended complaint alleges that the defendant insurer’s "failure to promptly adjust the losses” under both policies was the proximate cause of the demise of the business, plaintiff changed its strategy at trial and contended that it was defendant’s failure to timely settle the claim under the business automobile policy which had, in fact, necessitated the "liquidation” of the business for $250,000 in 1986.
The plaintiff conceded at trial that it had not fulfilled its obligations under the multi-peril policy by providing copies of its tax returns until at least 1988. However, plaintiff contended *874 that the claim under the automobile policy, with which it contended it had fully complied, should have been paid prior to the sale of the business in October of 1986.
The defendant insurer, in moving for a trial order of dismissal pursuant to CPLR 4401, claimed that it was entitled to conduct an investigation for suspected arson and could not, under any circumstances, settle the claim on the business auto policy without waiving its rights under the multi-peril policy which insured the physical plant and assets of the business and provided business interruption coverage.
Although there was no obligation upon defendant to make partial payments on an insurance policy to an insured based upon claims of impending additional losses (Cohen v New York Prop. Ins. Underwriting Assn., 65 AD2d 71), once the insurer had determined that there was no defense to payment based upon arson, the policies could have been treated as the separate contracts which they were. However, as long as there is a legitimate ongoing investigation into whether a claimant has participated in creating the loss for which the claim is made, it is reasonable to presume that an insurer which makes a payment on such a claim would be estopped to deny a claim resulting from the same event under another policy.
Thus, in a case, as here, of suspected arson, a partial payment could not reasonably be expected until the issue of the claimant’s participation was resolved in his favor. Therefore, the insured would necessarily have to prove a date on which it was no longer the target of the arson investigation in order to seek payment on one of the policies.
Moreover, there is no question but that an insurer has the right to investigate an incendiary loss and that the insured is required to cooperate in that investigation (2423 Mermaid Realty Corp. v New York Prop. Ins. Underwriting Assn., 142 AD2d 124). Cooperation includes the submission by the claimant of documentation and sworn statements, including tax returns of the claimant (see, Leon Sylvester, Inc. v Aetna Cas. & Sur. Co., 189 AD2d 730; 2423 Mermaid Realty Corp. v New York Prop. Ins. Underwriting Assn., supra; Williams v American Home Assur. Co., 97 AD2d 707, affd 62 NY2d 953). Since plaintiff in this case failed to provide the insurer with the properly requested information until at least 1988, its contention that it should have been paid under the business auto policy in 1986 must fail.
However, and more to the point, in the relatively few cases where a cause of action for consequential damages is *875 premised upon an insurer’s alleged failure to timely pay on its insured’s claim, the courts have uniformly dismissed those causes of action because "[s]uch consequential damages neither arose from defendant’s breach of the insurance contract, nor were they within the contemplations of the parties when the policy was issued [citations omitted]” (LTS Contrs. v Hartford Ins. Co., 99 AD2d 644; see also, Sweazey v Merchants Mut. Ins. Co., 169 AD2d 43; Kanapaska v Prudential Prop. & Cas. Ins. Co., 122 AD2d 935; Annotation, Insurance Settlement — Punitive Damages, 47 ALR3d 314).
So, for example, where an insured is required to incur legal costs following a disclaimer, those legal costs, arising directly from the insurer’s refusal to defend, are recoverable (see, Fleming v Allstate Ins. Co., 106 AD2d 426).
And, unlike a situation where a claim for consequential damages must be dismissed because the parties did not consider the likelihood and extent of fire damage to plaintiffs business at the time the contract was made, the parties in this case specifically contemplated and contracted for insurance coverage which would indemnify the plaintiff if it was prevented from continuing its business by a fire loss in the business interruption endorsement. "A court may not create policy terms by implication or rewrite an insurance contract. (Bretton v Mutual of Omaha Ins. Co., 110 AD2d 46, 49, affd 66 NY2d 1020.) Nor should a court reach to find an ambiguity where the policy language has a definite and precise meaning. (Pergament Distribs. v Old Republic Ins. Co., 128 AD2d 760, 761, lv denied 70 NY2d 607.) 'An insurer is entitled to have its contract of insurance enforced in accordance with its provisions and without a construction contrary to its express terms.’ (Bretton v Mutual of Omaha Ins. Co., supra, 110 AD2d, at 49.)” (Adorable Coat Co. v Connecticut Indem. Co., 157 AD2d 366, 369.)
Since the parties specifically contemplated and contracted for coverage for the loss of operation of plaintiffs business and did not contract for consequential damages beyond that endorsement, and since the plaintiff accepted the settlement of the claim for interruption of the business and did not at any time make additional claims to the insurer for the loss of value of the business, the plaintiffs cause of action must be dismissed insofar as it seeks damages based upon a breach of the insurance contract between the parties.
Based upon the foregoing, the defendant’s motion is granted in its entirety and the complaint is dismissed.
Insofar as plaintiff has moved for the dismissal of the counterclaim, the counterclaim is dismissed as defendant failed *876 to meet its burden at trial by clear and convincing evidence that Mr. Stanford had submitted his son’s tax return, rather than his own, in order to deceive the insurer.