In re EUROSPARK INDUSTRIES, INC., Debtor.

Eurospark Industries, Inc., Debtor–in–Possession, Plaintiff,

v.

Massachusetts Bay Insurance Company, Defendant.

Eurospark Industries, Inc., Debtor–in–Possession, Plaintiff,

v.

The Underwriters at Lloyds Subscribing to the Risk on Cover No. 97FA0071010A, Cert. No. 970035200A, and The Underwriters at Lloyds Subscribing to the Risk on Cover No. 97FA0032080, Cert. No. FC10328697, Defendants.

Bankruptcy No. 198–21459–260.
Adversary Nos. 198–1499–260, 198–1514–260.

United States Bankruptcy Court, E.D. New York.

Jan. 16, 2003.

Weg & Myers, P.C., By Joshua L. Mallin, Esq., New York City, Special Counsel for Debtor.

Abrams Gorelick Friedman & Jacobson, By Daniel J. Friedman, Esq., New York City, for Defendants.

### DECISION ON PLAINTIFF'S MOTION TO COMPEL AND DEFENDANTS—THE UNDERWRITERS AT LLOYDS' CROSS–MOTION FOR DISMISSAL OF THE THIRD CLAIM FOR RELIEF

CONRAD B. DUBERSTEIN, Chief Judge.

This decision concerns two motions made in the above-captioned consolidated adversary proceedings. The plaintiff, the within debtor, Eurospark Industries, Inc. (hereinafter "Eurospark") made a motion to compel the defendant in adversary proceeding No. 98–1499, Massachusetts Bay Insurance Company (hereinafter "Mass Bay"), and the defendants in adversary proceeding No. 98–1514, the Underwriters at Lloyds Subscribing to the Risk on Cover No. 97FA0071010A, Cert. No. 970035200A and the Underwriters at Lloyds Subscribing to the Risk on Cover No. 97FA0032080, Cert. No. FC10328697 (hereinafter "Lloyds"), to produce certain documents demanded by Eurospark in its Fourth Request for Production of Docu-

ments, pursuant to FED.R.CIV.P. 26 and 37. Subsequently, Lloyds made a cross-motion seeking to dismiss the third claim of the Amended Complaint filed in adversary proceeding No. 98–1514 (hereinafter "Amended Complaint") for failure to state a claim upon which relief may be granted, pursuant to FED.R.CIV.P. 12(b)(6), and for failure to plead fraud with particularity, pursuant to FED.R.CIV.P. 9(b). For the reasons set forth herein, the motion to compel is denied, and the cross-motion to dismiss is granted.

## FACTS

Eurospark filed its petition for relief under chapter 11 of the Bankruptcy Code [1] on August 14, 1998. On March 14, 1998, prior to the filing of the petition, an alleged armed robbery took place at Eurospark's jewelry manufacturing facility. (Compl. ¶ 10 (No. 98–1499); Am. Compl. ¶ 14 (No. 98–1514).) At the time of the robbery, Eurospark maintained insurance policies. Lloyds provided Eurospark with two insurance policies for losses arising from theft. (Am. Compl. ¶¶ 8, 10, 11, 13 (No. 98–1514).) In addition, Mass Bay provided Eurospark with an insurance policy for losses arising from business interruption. (Compl. ¶¶ 7, 8 (No. 98–1499).)

The above-captioned adversary proceedings were commenced by Eurospark within its bankruptcy case to recover damages from Lloyds and Mass Bay for breach of their insurance contracts with Eurospark. Eurospark alleges that it performed all its obligations under the insurance policies, that the policies covered the losses that it incurred as a result of the robbery and that Lloyds and Mass Bay breached their insurance contracts with Eurospark by not paying its claims. (Compl. ¶¶ 8, 9, 16, 19

(No. 98–1499); Am. Compl. ¶¶ 9, 10, 12, 13, 22, 29 (No. 98–1514).)

Initially, this court will consider Lloyds' cross-motion to dismiss the third claim in the Amended Complaint, as its disposition affects Eurospark's motion to compel. The third claim of the Amended Complaint alleges breach of the implied covenant of good faith and fair dealing of both property insurance contracts by Lloyds. (Am. Compl. ¶ 40 (No. 98–1514).)

## DISCUSSION

### I. *Lloyds' Cross–Motion to Dismiss*

#### A. *Standard of Review under FED. R.CIV.P. 12(b)(6)*

Lloyds' cross-motion to dismiss is governed by FED.R.CIV.P. 12(b)(6) [2]. In their cross-motion, Lloyds' alleges that the third claim in Eurospark's Amended Complaint fails to satisfy the pleading requirements for a claim for punitive damages arising from a breach of contract under New York law. Lloyds makes their cross-motion to dismiss pursuant to FED.R.BANKR.P. 7012(b), which, in turn, makes FED.R.CIV.P. 12(b) applicable in adversary proceedings.

The standard for a motion to dismiss under FED.R.CIV.P. 12(b)(6) was pronounced by the U.S. Supreme Court in *Conley v. Gibson.* Therein, the Supreme Court stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When examining the complaint for sufficient facts to constitute a claim, the court must "contru[e] the complaint liberally, ac-

---

1. Title 11 of the United States Code.

2. FED.R.CIV P. 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted."

cepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). In addition, "[a] complaint will not be dismissed merely because a plaintiff's allegations do not support the particular legal theory advanced in the complaint," as the allegations need only "provide a basis for relief under any possible theory." *Magee v. Nassau County Med. Ctr.,* 27 F.Supp.2d 154, 160 (E.D.N.Y. 1998).

The scope of materials which the court may consider on a motion to dismiss is limited. The court may look to the following: " 'documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.' " *Chambers,* 282 F.3d at 153 (citing *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993)). The scope of what may be considered is limited because a motion to dismiss determines only the legal sufficiency of the complaint; it does not weigh the merits of plaintiff's claims. *See In re Ski Train Fire in Kaprun, Austria on November 11, 2000,* 230 F.Supp.2d 392, *available at* No. MDL 1428, 2002 WL 1870065, at *1 (S.D.N.Y. Aug.14, 2002). If the court desires to consider materials beyond the four corners of the complaint, it must convert the motion to one for summary judgment. *See* FED. R.CIV.P. 12(b); *Chambers,* 282 F.3d at 152.

Federal policy favors allowing a plaintiff whose complaint is dismissed to replead. *See generally* FED.R.CIV.P. 15(a) (providing that leave to amend the pleading "shall be freely given when justice so requires"). The policy embodied by the federal rules favors deciding cases on the basis of their merits as opposed to their technical defects. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (" 'The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.' " (quoting *Conley,* 355 U.S. at 48, 78 S.Ct. 99)); FED.R.CIV.P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). In as much as a decision to dismiss for failure to state a claim is based on the legal insufficiency of the complaint and does not reach the merits of a claim, the court will often allow the plaintiff an opportunity to state a legally sufficient claim in an amended complaint. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991); 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1990 & Supp.2002). Leave to amend the complaint should not be granted, however, if the amendment would be futile. *See Lucente v. Int'l Bus. Machs. Corp.,* 310 F.3d 243, 258 (2d Cir.2002). An amendment is futile if it would not be capable of withstanding a motion to dismiss. *See id.*

### B. Standard for Federal Court Determining State Law

This court must look to New York law in order to evaluate the legal sufficiency of Eurospark's third claim for relief. The third claim for relief alleges damages resulting from Lloyds' breach of an insurance contract. The parties are not in dispute that the law of the state of New York governs their contract. *See Krumme v. Westpoint Stevens Inc.,* 238 F.3d 133, 138 (2d Cir.2000) (" '[I]mplied consent ... is sufficient to establish choice of law.' " (quoting *Tehran–Berkeley Civil & Envtl. Eng'rs v. Tippetts–Abbett–McCarthy–Stratton,* 888 F.2d 239, 242 (2d Cir.1989))).

■ When a federal court needs to decide an issue of state law, it must do so in the way the state's highest court would. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (noting the lack of uniformity in the administration of state laws that resulted when a federal court sitting in diversity exercised independent judgment in matters of general jurisprudence instead of applying the state law as declared by its highest court); *Baker v. Health Mgmt. Sys., Inc.,* 298 F.3d 146, 149 (2d Cir.2002) (" '[W]e are obligated to apply New York law as determined by its highest court.' " (quoting *Hamilton v. Beretta U.S.A. Corp.,* 264 F.3d 21, 29 (2d Cir.2001))). The federal court should be careful to be true to the reasoning the highest state court has adopted or would adopt, regardless of whether the federal court agrees with it. *See West v. Am. Tel. & Tel. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940) ("[I]t is the duty of the [federal courts] . . . to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear . . . ."); *Maska U.S., Inc. v. Kansa Gen. Ins. Co.,* 198 F.3d 74, 80 (2d Cir.1999) (" '[F]ederal courts are not free to develop their own notions of what should be required by the public policy of the state, but are bound to apply the state law as to these requirements.' " (quoting *Cornellier v. Am. Cas. Co.,* 389 F.2d 641, 644 (2d Cir.1968))).

■ In determining how the highest state court would rule on an issue, the federal court looks to a variety of sources. First and foremost, the federal court must look to rulings of the state's highest court. *See Comm'r of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967) (stating that when "the underlying substantive rule involved is based on state law . . . the State's high-

est court is the best authority on its own law."). If the issue in question has not been decided by the highest state court, the federal court must predict how that court would rule. *See Estate of Bosch,* 387 U.S. at 465, 87 S.Ct. 1776 ("If there be no decision by [the State's highest] court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court."); *Pinto v. Allstate Ins. Co.,* 221 F.3d 394, 402 (2d Cir.2000). In predicting how the highest state court would rule, the federal court should look to the trends displayed by prior rulings of that court, to rulings of the lower state courts, to relevant rulings from other jurisdictions and to secondary materials. *See Tinelli v. Redl,* 199 F.3d 603, 606 (2d Cir.1999) ("This inquiry [into how the highest state court would rule] requires us to look to the decisions of the lower state courts and to consider decisions in other jurisdictions."); *L–Tec Elecs. Corp. v. Cougar Elec. Org., Inc.,* 198 F.3d 85, 87 (2d Cir.1999) ("If there is no decision of the highest court directly on point, the district court may look to any sources on which that state court might rely . . . ."). If an intermediate appellate state court has decided the issue in question, "that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West,* 311 U.S. at 237, 61 S.Ct. 179. In addition, if a higher federal court within the same circuit has ruled on the relevant state law issues, that ruling is binding on a lower federal court. *See* 17A JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 124.22[4] (3d ed. 1997) ("When a higher federal court has ruled on a particular point of state law, a lower court must ordinarily follow that decision

in the absence of an intervening, authoritative state decision."); *In re Sokolowski*, 205 F.3d 532, 534–535 (2d Cir.2000) (" '[T]his court is bound by a decision of a prior panel unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or this court *en banc*.' " (quoting *United States v. Ianniello*, 808 F.2d 184, 190 (2d Cir.1986) (alteration in original))).

### C. *Definition of First–Party Actions*

The instant action for breach of insurance contract is commonly referred to as a first-party action. First-party actions arise when the insured sues its insurer over the insurer's treatment of the insured's claims or benefits. *See* STEPHEN S. ASHLEY, BAD FAITH ACTIONS LIABILITY & DAMAGES § 2:14 (2d ed. 1998 & Supp.2001). First-party actions are distinguishable from third-party actions, wherein the insured sues its insurer over the insurer's treatment of the claims of a third party against the insured. *See id.* This distinction is important because an agency/fiduciary relationship is created in third-party actions between the insurer, who controls the disposition of the third party's claims, and the insured. *See id.* (discussing the distinction between first-party and third-party cases recognized in *Beck v. Farmers Ins. Exch.*, 701 P.2d 795 (Utah 1985)). No such relationship is created in the first-party context, which simply involves the contractual obligation to pay claims or benefits. *See id.*

### D. *Implied Covenant of Good Faith and Fair Dealing*

Eurospark's third claim for relief alleges that Lloyds breached the implied covenant of good faith and fair dealing.

In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance. This covenant embraces a pledge that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." While the duties of good faith and fair dealing do not imply obligations "inconsistent with other terms of the contractual relationship," they do encompass "any promises which a reasonable person in the position of the promisee would be justified in understanding were included."

*511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 746 N.Y.S.2d 131, 773 N.E.2d 496, 500–501 (2002) (citations omitted). "Certainly, a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims." *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 769 (1995). Eurospark's third claim, which alleges "bad faith" and "delay" in paying its covered claim, thus states a cause of action for breach of the implied covenant of good faith and fair dealing. (Am.Compl.¶ 36.) A claim for breach of the implied covenant of good faith and fair dealing, however, is not a separate cause of action, but duplicative of the underlying breach of contract claim. *See Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir.2002) (affirming district court's dismissal of a claim for breach of the implied covenant of good faith and fair dealing as duplicative of the underlying breach of contract claim, where both breaches were based upon the same facts); *New York Univ.*, 662 N.E.2d at 770 (dismissing the claim for breach of the implied covenant of good faith and fair dealing as duplicative of the claim for breach of the underlying contract).

### E. *Punitive Damages in First–Party Bad Faith Actions under New York Law*

Lloyds argue that because Eurospark's third claim for relief seeks damages be-

yond the policy limits, it is punitive. As such, Lloyds argue that the allegations in Eurospark's Amended Complaint fail to assert the behavior for which punitive damages would be awarded in a contract action under New York law. At the outset, this court notes that in the memoranda filed in this cross-motion, Eurospark repeatedly characterizes its third claim for relief as seeking only consequential damages, not punitive damages.

It is well-settled under New York law that punitive damages can only be awarded in a contract action when a tort is alleged. The Court of Appeals of New York reiterated the standard for punitive damages in *New York Univ., supra,* a first-party bad faith action. Therein, it stated the elements of a claim that would support punitive damages as follows: "(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of the egregious nature set forth in *Walker v. Sheldon;* (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally." *New York Univ.,* 662 N.E.2d at 767 (citations omitted). The court qualified the egregious conduct exemplified in *Walker,* stating "[p]unitive damages are available only in those limited circumstances where it is necessary to deter defendant and others like it from engaging in conduct that may be characterized as 'gross' and 'morally reprehensible,' and of 'such wanton dishonesty as to imply a criminal indifference to civil obligations.'" *Id.* (quoting *Walker v. Sheldon,* 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497, 499 (1961)). Furthermore, a claim for punitive damages cannot stand as a separate cause of action, but must be part of an underlying claim. *See Rocanova v. Equitable Life Assurance Soc'y of the United States,* 83 N.Y.2d 603, 612 N.Y.S.2d 339, 634 N.E.2d 940, 945 (1994) ("A demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action.").

By reason of the foregoing cited authorities, it is apparent that Eurospark's third claim fails to establish the threshold task of alleging a tort. "[D]efendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations." *New York Univ.,* 662 N.E.2d at 767. The implied covenant of good faith and fair dealing cannot be converted from a contractual obligation to a tort duty. *See New York Univ.,* 662 N.E.2d at 770 ("[T]he use of familiar tort language in the pleading does not change the cause of action [for breach of the implied covenant of good faith and fair dealing] to a tort claim in the absence of an underlying tort duty sufficient to support a claim for punitive damages."); *Acquista v. New York Life Ins. Co.,* 285 A.D.2d 73, 730 N.Y.S.2d 272, 278 (N.Y.App.Div.2001) ("We are unwilling to adopt the widely accepted tort cause of action for 'bad faith' in the context of a first-party claim, because we recognize that to do so would constitute an extreme change in the law of this State."). While the "nature of a contract obligation" can create a tort duty if there is a "public interest in seeing it performed with reasonable care," there is no such public interest in the contractual obligation of good faith and fair dealing in the context of a first-party case. *New York Univ.,* 662 N.E.2d at 767 (citing *Sommer v. Fed. Signal Corp.,* 79 N.Y.2d 540, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992)). In *Sommer,* the contract obligation giving rise to a tort duty was "to protect people and property from physical harm" and "governing the conduct of insurers and protecting the fis-

cal interests of insureds is simply not in the same league as the protection of the personal safety of citizens." *Id.* at 768.

It is abundantly clear that the only portions of Eurospark's third claim that hint at the standard established for punitive damages are general statements. Eurospark alleges that Lloyds' delay in paying the claims were "part of a course of conduct and business" and "in violation of section 2601 of the New York Insurance Law." (Am.Compl.¶ 36.) The Court of Appeals of New York has ruled, however, "that Insurance Law § 2601 does not give rise to a private cause of action" and "cannot be construed to impose a tort duty of care flowing to the insured separate and apart from the insurance contract." *New York Univ.*, 662 N.E.2d at 768. In addition, the statement "part of a course of conduct and business" (Am.Compl.¶ 36.), which presumably go towards establishing the fourth prong of the *New York Univ.* test, that is a "pattern directed at the public," *New York Univ.*, 662 N.E.2d at 767, is conclusory and insignificant absent the threshold requirement of establishing a sufficiently egregious tort. *See Rocanova*, 634 N.E.2d at 944 (holding that fraudulent intent could not be inferred in that first-party bad faith case "from the mere compilation of 124 'vignettes' of policyholder 'difficulties,'" which "possesses no legal significance absent [the insured's] ability to state a claim ... of a cognizable tort ... and to demonstrate that the wrong to [the insured] not only rose to the level of 'such wanton dishonesty as to imply a criminal indifference to civil obligations,' but was also part of a pattern of similar, publicly directed misconduct" (citation omitted)).

### F. *Consequential Damages in First–Party Bad Faith Actions under New York Law*

Eurospark asserts that the third claim for relief merely seeks consequential damages. The Court of Appeals of New York has not ruled on whether consequential damages are recoverable in a first-party claim for breach of an insurance contract. The Appellate Division of the First Department, however, has ruled that consequential damages are recoverable in a first-party bad faith case in *Acquista, supra.*

Prior to examining *Acquista*, this court notes that Eurospark's third claim is not an independent cause of action. As noted *supra*, an alleged breach of the implied covenant of good faith and fair dealing, such as Eurospark's third claim, is duplicative of a breach of contract claim and is not a separate cause of action upon which damages may be based. *See Harris*, 310 F.3d at 80; *New York Univ.*, 662 N.E.2d at 770. Thus, even if Eurospark could seek consequential damages, it would have to do so in its breach of contract claims. Ultimately, this court need not determine whether a claim seeking consequential damages in a first-party case is viable in New York, in as much as it clearly appears that Eurospark has not satisfied the pleading requirements for consequential damages.

In *Acquista*, the plaintiff alleged bad faith investigation of a claim for disability benefits and delay in payment. Specifically, the plaintiff's claim sought relief for the insurance company's "conscious campaign calculated to delay and avoid payment on [Acquista's] claims, while having determined at the outset that it would deny coverage." *Acquista*, 730 N.Y.S.2d at 275.

The *Acquista* decision described the national trend in insurance law in remedying bad faith conduct and the policy behind allowing consequential damages. The court begins by noting that "[u]nder the traditional analysis, because insurance policies are viewed as contracts for the pay-

ment of money only, the damages available for an insurer's failure to pay or provide benefits have been limited to the amount of the policy plus interest." *Id.* at 276. Yet, this traditional analysis assumes that the insured has alternative funds to pay for the claims which the insurer unreasonably refuses to pay. *See id.* Furthermore, "if statutory interest is lower than that which the insurer can earn on the sums payable, the insurer has a financial incentive to decline to cover or pay on a claim." *Id.* In response to this injustice, some states have allowed insureds to pursue tort claims for their insurer's bad faith conduct, while others have allowed the insureds' contract claims to seek foreseeable damages in excess of policy limits. *Id.* at 276–277. The *Acquista* court stated that it was "unwilling to adopt the widely accepted tort cause of action for 'bad faith' in the context of a first-party claim, because [it] recognize[d] that to do so would constitute an extreme change in the law of this State." *Id.* at 278. Instead, the court adopted the reasoning of the Supreme Court of Utah in *Beck,* which held that the policy limits " 'do not define the amount for which [the insurer] may be liable upon a breach.' " *Id.* (quoting *Beck,* 701 P.2d at 801). Thus, the court allowed the bad faith allegations to "be employed to interpose a claim for consequential damages beyond the limits of the policy for the claimed breach of contract." *Id.* at 279.

The *Acquista* decision has been met with disapproval. In the first-party case of *Brown v. The Paul Revere Life Ins. Co.,* the court concluded that "[t]here does not appear to be any basis on which to distinguish *Acquista* from *Rocanova* and *New York Univ.*" and, thus, "*Acquista* is contrary to the decisions of the Court of Appeals." *Brown v. Paul Revere Life Ins. Co.,* No. 00 CIV. 9110, 2001 WL 1230528, at *5 (S.D.N.Y. Oct.16, 2001). *Rocanova* and *New York Univ.* are distinguishable,

however, from *Acquista.* In *Rocanova,* the court dismissed plaintiff's claim for breach of the implied covenant of good faith and fair dealing as being incapable of supporting punitive damages. *See Rocanova,* 634 N.E.2d at 944. In *New York Univ.,* the plaintiff's claim for breach of the implied covenant of good faith and fair dealing, which sought relief in the amount of the insurance claim, was dismissed as duplicative of the breach of contract claim as plaintiff did not sufficiently plead a claim for punitive damages. *See New York Univ.,* 662 N.E.2d at 766–767, 770. In both *Rocanova* and *New York Univ.,* the Court of Appeals of New York only addressed the inability of the plaintiff to plead a tort upon which punitive damages may be based. In neither case was the issue of consequential contract damages addressed. Both cases only addressed the limited circumstances in which "damages in excess of contract damages" may be awarded. *Manning v. Utils. Mut. Ins. Co., Inc.,* 254 F.3d 387, 400 (2d Cir.2001) (applying *Rocanova* and *New York Univ.* pleading requirements when "damages in excess of contract damages" were sought in a first-party case); *New York Univ.,* 662 N.E.2d at 767 (stating that *Rocanova* "reiterated the principle that damages arising from the breach of a contract will ordinarily be limited to the contract damages necessary to redress the private wrong"). In *Acquista,* the court specifically refused to establish a tort cause of action for bad faith, but allowed consequential contract damages instead. *See Acquista,* 730 N.Y.S.2d at 278–279; *Sichel v. UNUM Provident Corp.,* 230 F.Supp.2d 325, 328–330 (S.D.N.Y.2002) (stating that *Acquista* was "[c]onsistent with precedent" and that consequential damages could be sought in the first-party breach of contract claim). The Court of Appeals of New York, however, has voiced disapproval of damages in

excess of policy limits in a first-party action as follows:

> an insured may recover damages in excess of policy limits when such damages stem from an insurer's bad faith refusal to settle a liability claim made by a third party. That principle can find no application where the insurer has terminated disability benefits allegedly payable to the insured, for there is no possibility of the insured being cast in damages which exceed policy limits by reason of the insurer's conduct.

*Halpin v. Prudential Ins. Co. of Am.*, 48 N.Y.2d 906, 425 N.Y.S.2d 48, 401 N.E.2d 171, 172 (1979).

Furthermore, if the Court of Appeals of New York were to allow consequential damages, it would follow the standard it set in *Kenford Co. v. County of Erie*.[3] *See Harris*, 310 F.3d at 80 n. 3 (quoting the *Kenford Co.* standard for pleading consequential damages as being applicable in a first-party claim for breach of the implied covenant of good faith and fair dealing for refusing to pay disability benefits, if such damages are recoverable in New York). In *Kenford Co.*, a non-insurance case, the court stated the standard as follows:

"[i]n order to impose on the defaulting party a further liability than for damages [which] naturally and directly [flow from the breach], i.e., in the ordinary course of things, arising from a breach of contract, such unusual or extraordinary damages must have been brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting." In determining the reasonable contemplation of the parties, the nature, purpose and particular circumstances of the contract known by the parties should be considered, as well as "what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that is assumed, when the contract was made."

*Kenford Co. v. County of Erie*, 73 N.Y.2d 312, 540 N.Y.S.2d 1, 537 N.E.2d 176, 178–179 (1989) (alterations in original) (citations omitted). In the absence of a contract provision providing for consequential damages, "the commonsense rule to apply is to consider what the parties would have concluded had they considered the sub-

---

3. *See also Wiener v. Unumprovident Corp.*, 202 F.Supp.2d 116, 124 n. 6 (S.D.N.Y.2002) (citing *Sweazey v. Merchs. Mut. Ins. Co.*, 169 A.D.2d 43, 571 N.Y.S.2d 131, 132–133 (N.Y.App.Div.1991) for the pleading standard for consequential damages in a first-party bad faith case); *Sabbeth Indus. Ltd. v. Pa. Lumbermens Mut. Ins. Co.*, 238 A.D.2d 767, 656 N.Y.S.2d 475, 477 (N.Y.App.Div.1997) (citing the *Kenford Co.* pleading standard for consequential damages as being applicable in a first-party bad faith case); *Sweazey*, 571 N.Y.S.2d at 132 (citing the *Kenford Co.* pleading standard for consequential damages as being applicable in a first-party bad faith case); *Harriman v. Norfolk & Dedham Mut. Fire Ins. Co.*, 172 A.D.2d 585, 568 N.Y.S.2d 820 (N.Y.App.Div.1991) (stating that plaintiff's claims for consequential damages in that first-party bad faith case were "speculative, remote, and could not have been within the contemplation of the parties at the time of the execution of this insurance contract"); *LTS Contractors, Inc. v. Hartford Ins. Co.*, 99 A.D.2d 644, 472 N.Y.S.2d 222, 223 (N.Y.App.Div.1984) (stating that the claim for consequential damages in that first-party bad faith case was properly dismissed because such damages were not "within the contemplations of the parties when the policy was issued"); *Grand Metro Transit Mix Corp. v. Mich. Mut. Ins. Co.*, 170 Misc.2d 872, 652 N.Y.S.2d 691, 693 (N.Y.Sup.Ct.1996) (citing *Sweazey* and *LTS Contractors, Inc.* for the standard for consequential damages in a first-party bad faith case); *White v. Blue Cross & Blue Shield of Greater N.Y.*, 146 Misc.2d 125, 549 N.Y.S.2d 598, 600–601 (N.Y.Sup.Ct.1989) (citing the *Kenford Co.* pleading standard for consequential damages as being applicable in a first-party bad faith case).

ject." *Id.* at 179. (emphasis omitted). In addition, "'bare notice of special consequences which might result from a breach of contract, unless under such circumstances as to imply that it formed the basis of the agreement, would not be sufficient [to impose liability for special damages].'" *Id.* (alterations in original) (quoting *Booth v. Spuyten Duyvil Rolling Mill Co.*, 60 N.Y. 487, 494 (N.Y.1875)). The *Kenford Co.* decision was neither mentioned nor applied in *Acquista*.

Here, the pleading requirements for consequential damages established by *Kenford Co.* are not satisfied. There is no indication in either the Amended Complaint or the attached policies that such damages were within the contemplation of the parties at the time of contracting. The only allegation that hints at this standard states that Eurospark "repeatedly advised [Lloyds] ... that their delay in accepting and paying [its] claims was causing Eurospark and its creditors extensive damages." (Am.Compl.¶ 37.) By necessity, this notice to Lloyds took place after the time of contracting and when the claims were made. Furthermore, Lloyds points out that "[i]t was clearly contemplated by Eurospark that any consequential damages that might result from the loss of its inventory would be covered by the business interruption coverage offered in the MASS BAY policy." (Defs.' Reply Mem. of Law at 2.) As there is no indication that Eurospark could fulfill the *Kenford Co.* standard if it were to replead to add its request for consequential damages to its breach of contract claims, allowing it to do so would be futile.

## II. *Eurospark's Motion to Compel*

### A. FED.R.CIV.P. 60(b)

Lloyds assert that this court should not consider Eurospark's motion to compel. This is because the motion was denied on October 24, 2000, and Eurospark fails to adhere to FED.R.CIV.P. 60(b)[4], which sets forth the requirements for relief from a judgment or order.

FED.R.CIV.P. 60(b) applies to "a final judgment, order, or proceeding," however, and not to interlocutory judgments. FED.R.CIV.P. 60(b). "[I]nterlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." FED. R.CIV.P. 60(b) advisory committee's notes (1946 amend.). It is "clear that orders entered during the course of [an adversary proceeding or contested matter] which leave the merits to be determined are interlocutory." 1 COLLIER ON BANKRUPTCY ¶ 5.07[5] (Lawrence P. King et al. eds., 15th ed.2002). The denial of the motion to compel in the above-captioned adversary proceeding, which this court notes was without prejudice (Tr. at 18 (Oct. 24, 2000).), was ministerial and did not reach the merits of the adversary proceeding. Thus, the order was interlocutory, and FED.R.CIV.P. 60(b) is inapplicable.

4. FED.R.CIV.P. 60(b) provides as follows:

[o]n motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); ... (5) ... a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application .... The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

### B. *Eurospark's Fourth Request for Production of Documents*

Eurospark's motion to compel responses to its Fourth Request for Production of Documents is denied. By Eurospark's own admission, the documents requested are irrelevant absent a claim for consequential damages. (Tr. at 16–17 (Mar. 5, 2002) (Mr. Mallin: "I only want to chase those documents if I know I have an extra contractual claim .... If I don't, then the documents are irrelevant.").)

### CONCLUSION

1. This Court has jurisdiction over the instant matter pursuant to 11 U.S.C. § 105(a), 541 & 542 and 28 U.S.C. §§ 157(a), (b)(2)(A), (b)(2)(E), (b)(2)(O) & 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges for the Eastern District of New York, dated August 28, 1986.

2. The motion made by Eurospark to compel defendants, Lloyds and Mass Bay, to produce the documents demanded in its Fourth Request for Production of Documents is denied.

3. The cross-motion made by Lloyds to dismiss the third claim of the Amended Complaint is granted.

4. Lloyds is directed to settle an Order in conformity with this decision.